Charles **BAKER** et al., Appellants,

v.

F & F INVESTMENT et al., Appellees.

No. 173, Docket 72–1413.

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1972.

Decided Dec. 7, 1972.

Douglas C. Nohlgren, Thomas P. Sullivan, John C. Tucker, John G. Stifler, Richard T. Franch, Chicago, Ill. (Jenner & Block, Thomas J. Boodell, Jr., Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., Herbert Teitelbaum, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for appellants.

Martin I. Kaminsky, Pollack & Singer, New York City, for appellees.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

■ This unusual interlocutory appeal involves the validity of a district judge's decision refusing to compel a journalist to disclose confidential news sources. Appellants here are plaintiffs in a federal class action pending in the Northern District of Illinois,[1] a case which involves alleged racial discrimination in the sale of houses to Negroes in Chicago. Appellants moved in the Southern District of New York for an order under Rule 37, F.R.Civ.P.,[2] to compel Alfred Balk, a journalist, to answer questions posed to him during the taking of his oral deposition in New York City. Judge Bonsal denied the motion. Appellants urge us to extend to this civil case the limited principle of Branzburg v.

---

1. Baker, et al. v. F & F Investment, et al., 69 C 15 (N.D.Ill.).

2. Rule 37, Failure to Make Discovery: Sanctions, provides, in pertinent part:

    (a) Motion for Order Compelling Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

    (1) *Appropriate Court.* An application for an order to a party may be made to the court in which the action is pending, or, on matters relating to a deposition, to the court in the district where the deposition is being taken. An application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken.

    (2) *Motion.* If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34 fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.

    If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c).

Hayes (United States v. Caldwell), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), which held only that newsmen could be required to disclose confidential sources to a grand jury conducting a criminal investigation. We decline that invitation and affirm the order below.[3]

## I.

The underlying case is a civil rights class action brought in behalf of all Negroes in the City of Chicago who purchased homes from approximately 60 named defendants between 1952 and 1969. The complaint alleges that defendants sold homes at excessive prices by engaging in racially discriminatory practices such as "blockbusting." Appellants' complaint survived a motion to dismiss, see, Contract Buyers League, et al. v. F&F Investment, 300 F.Supp. 210 (N.D. 111, 1969)[4] and, with the issue joined they embarked upon pretrial discovery.

In connection with its discovery, appellants deposed Alfred Balk who is, at present, editor of the Columbia Journalism Review and a lecturer at the Graduate School of Journalism of Columbia University. Approximately ten years ago, while living in Chicago, Mr. Balk wrote an article on "blockbusting" which was published in the *Saturday Evening Post* on July 14, 1962. The story, entitled "Confessions of a Block-Buster," was based upon information supplied to Mr. Balk by an anonymous real estate agent in Chicago, given the pseudonym "Norris Vitchek" for purposes of publication. The record discloses that "Vitchek" was unwilling to make his information available unless Balk and his publishers agreed not to reveal the true identity of their source. The article exposed details of real estate practices in the Chicago area including racially discriminatory activities on the part of unscrupulous landlords and real estate speculators.

At his deposition taken on June 7, 1971, it was apparent that Balk was highly sympathetic to appellants' cause and was anxious to cooperate. He indicated that he would "be happy to verify such information as you find in the article and describe such as I understand as [sic] the general mechanics of the real estate speculators' operations." He

3. Although neither party has questioned the appealability of this order, it is appropriate that we state that ordinarily, orders denying or directing discovery are non-appealable interlocutory decisions, see, e. g. Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906); Borden Co. v. Sylk, 410 F.2d 843 (3 Cir. 1969); United States v. Fried, 386 F.2d 691 (2d Cir. 1967); cf., Republic Gear Company v. Borg-Warner Corp., 381 F.2d 551 (2d Cir. 1967). Special circumstances, however, attend motions for discovery made in a district other than the district in which the main action is brought. Although an order compelling disclosure in an "outside" jurisdiction is generally not reviewable, see, e. g., National Nut Co. of California v. Kelling Nut Co., 134 F.2d 532 (7 Cir. 1943); cf., Honig v. E. I. duPont de Nemours & Co., 404 F.2d 410 (5 Cir. 1968), an order denying disclosure in a jurisdiction beyond that of the main proceeding is immediately reviewable, to give the party seeking discovery an effective remedy. Republic Gear Company v. Borg-Warner Corp., *supra*, 381 F.2d at 554.

In that case Judge Waterman stated the underlying policy justification for this rule as follows:

[E]ven if the appellate court in the jurisdiction in which discovery is sought awaited a final decision in the main proceeding before acting at all it would be necessary to return to the ancillary appellate court to argue the discovery issue. And if, upon appeal, the party were successful in reversing the lower court's order and thus obtained discovery, he would be required to go back to the court where the main case had already been tried, and there, with the discovered evidence now admissible on the merits, move to retry the case. The impracticality of this cumbersome procedure compels us to grant immediate appellate review of an order which, in another context, we might properly hold to have been an interlocutory order.

*Ibid. See also,* 9 Moore Federal Practice ¶ 110.13 [2] at 157.

4. Aff'd, Baker v. F. & F. Inv., 420 F.2d 1191 (7 Cir. 1970).

went on to state that he wrote the article on blockbusting, and that it accurately reflected information provided to him by "Norris Vitchek." Balk testified that "Vitchek" was a real person but Balk was unwilling to identify him on the ground that information given by "Vitchek" was made available on a confidential basis. Balk made it clear that his refusal to disclose confidential sources was based on "the First Amendment . . . which [protects] not only the right to disseminate, but the right to gather information."

Accordingly, appellants moved under Rule 37, F.R.Civ.P., for an order compelling Balk to disclose the identity of his confidential source. Judge Bonsal, in a well-considered opinion filed prior to the Supreme Court's decision in Branzburg v. Hayes (United States v. Caldwell), *supra*, balanced the competing public and private interests involved in the case and concluded that Balk should not be required to reveal "Vitchek's" identity.

■■ The law in this area is clearly stated. A motion seeking a discovery ruling is addressed to the discretion of the district court, and our function on appeal is to determine whether the trial judge abused his discretion in entering the challenged order, *see, e. g.*, Montecatini Edison S.P.A. v. E. I. du Pont de Nemours & Co., 434 F.2d 70 (3 Cir. 1970); Borden Co. v. Sylk, 410 F.2d 843 (3 Cir. 1969); Tiedman v. American Pigment Corp., 253 F.2d 803 (4 Cir. 1958). We conclude that Judge Bonsal was well within the ambit of his discretionary authority in denying appellants' motion for discovery.

Rather than rely on the Ninth Circuit Court of Appeals's decision in Caldwell v. United States, 434 F.2d 1081 (9 Cir. 1970), which established a journalist's testimonial privilege in criminal investigations conducted by the grand jury—a ruling subsequently reversed by the Supreme Court in Branzburg v. Hayes, *supra*[5]—Judge Bonsal instead sought independently to ascertain the applicable federal law governing resolution of the discovery motion before him. It suffices to state that federal law on the question of compelled disclosure by journalists of their confidential sources is at best ambiguous. Although it is safe to conclude, particularly after the Supreme Court's decision in *Branzburg*, a case about which we will have more to say in Part II of this opinion, that federal law does not recognize an absolute or conditional journalist's testimonial "privilege", neither does federal law require disclosure of confidential sources in each and every case, both civil and criminal, in which the issue is raised. Absent a federal statute to provide specific instructions, courts which must attempt to divine the contours of non-statutory federal law governing the compelled disclosure of confidential journalistic sources must rely on both judicial precedent and a well-informed judgment as to the proper federal public policy to be followed in each case.

To inform his judgment concerning appropriate federal public policy in the area of a newsman's privilege, Judge Bonsal looked to both New York and Illinois statutes governing newsmen's rights. These two states—and there are others—have enacted legislation protecting a journalist from forced disclosure of his confidential sources. Both statutes[6] were enacted after the publication of Mr. Balk's article, but prior to the filing of appellant's motion in the

5.  Caldwell v. United States was decided by the Ninth Circuit on November 16, 1970. The order in this case was dated February 16, 1972. The Supreme Court decided the *Branzburg* case on June 29, 1972.

6.  N.Y. Civil Rights Law § 79–h (McKinney's Consol.Laws, c. 6, Supp.1972) provides in part:

    Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network, shall be adjudged in contempt by any court, the legislature or other body having contempt

district court. In a memorandum to the Legislature approving New York's "newsman's privilege" statute, Governor Rockefeller stated:

Freedom of the press is one of the foundations upon which our form of government is based. A representative democracy, such as ours, cannot exist unless there is a free press both willing and able to keep the public informed of all the news.

The threat to a newsman of being charged with contempt and of being imprisoned for failing to disclose his information or its sources can significantly reduce his ability to gather vital information. . . .

. . . . . . . .

. . . This [legislation] affords a stronger safeguard of the free channels of news communication . . . by protecting newsmen from being compelled to disclose the information they gather, as well as the identity of their informants . . . .[7]

■ New York and Illinois State law, while not conclusive in an action of this kind, reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment, see e. g., New York Times v. Sullivan, 376 U. S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Compelled disclosure of confidential sources unquestionably threatens a journalist's ability to secure information that is made available to him only on a confidential basis—and the district court so found. The deterrent effect such disclosure is likely to have upon future "undercover" investigative reporting, the dividends of which are revealed in articles such as Balk's, threatens freedom of the press and the public's need to be informed. It thereby undermines values which traditionally have been protected by federal courts applying federal public policy.

As against these significant public and private interests, appellants urge us to consider the overriding importance of compelling testimony in judicial proceed-

powers, for refusing or failing to disclose any news or the source of any such news coming into his possession in the course of gathering or obtaining news for publication or to be published in a newspaper, magazine, or for broadcast by radio or television transmission station or network, by which he is professionally employed or otherwise associated in a news gathering capacity. The Illinois statute, Ch. 51, Ill.Rev.Stat. § 111 et seq. (1971), provides in part:

No court may compel any person to disclose the source of any information obtained by a reporter during the course of his employment except as provided in this Act.

The Illinois Act provides a number of limitations on the newsman's privilege. Section 111 states that the privilege "is not available in any libel or slander action in which a reporter or news medium is a party defendant."

When a journalist claims the privilege, the party seeking information may ask a court for an order compelling disclosure, see § 113, by indicating, inter alia, the specific information sought, its relevancy to the proceedings, "and, a specific public interest which would be adversely affected if the factual information sought were not disclosed," see § 114. In deciding such a motion, the Court is directed to consider "the nature of the proceedings, the merits of the claim or defense, the adequacy of the remedy otherwise available, if any, the relevancy of the source, and the possibility of establishing .by other means that which it is alleged the source requested will tend to prove," see § 116. Section 117 authorizes a court to compel disclosure only if it finds, inter alia "that all other available sources of information have been exhausted and disclosure of the information sought is essential to the protection of the public interest involved."

7. McKinney's Session Laws of New York, 1970, Vol. 2 at 3112. Governor Ogilvie stated, upon signing the Illinois bill into law:

The Act is more than a declaration of fair play for newsmen. It also assures a better informed public, for it allows reporters to seek the truth wherever it is to be found, without fear that their sources of information will be cut off by unnecessary disclosures. Editor & Publisher, October 10, 1971, p. 14, col. 2.

ings, *see, e. g.,* Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L. Ed. 375 (1932) (criminal proceeding); Garland v. Torre, 259 F.2d 545 (2 Cir.), cert. denied 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958) (libel action). This federal public policy is particularly strong, we are told, when the issue involves enforcement of federal laws in federal courts, and is even more trenchant when the case involves claims under various provisions of the civil rights acts.

This argument, we believe, goes too far, for it would require disclosure of confidential sources in every case based upon federal question jurisdiction or, at least, in every case raising a claim under the civil rights acts. We can see no justification for either a blanket rule covering all federal question cases, or for a partial rule of disclosure for all civil rights actions. It would be inappropriate for a court to pick and choose in such gross fashion between different acts of Congressional legislation, labelling one "exceedingly important" and another less so, without specific directions from the Legislature. While we recognize that there are cases —few in number to be sure—where First Amendment rights must yield, we are still mindful of the preferred position which the First Amendment occupies in the pantheon of freedoms. Accordingly, though a journalist's right to protect confidential sources may not take precedence over that rare overriding and compelling interest, we are of the view that there are circumstances, at the very least in civil cases, in which the public interest in non-disclosure of a journalist's confidential sources outweighs the public and private interest in compelled testimony. The case before us is one where the First Amendment protection does not yield.

We must recall that Balk was not a party to the underlying action. More-

over, Judge Bonsal stated that there were other available sources of information that might have disclosed the real identity of "Norris Vitchek," which appellants had not exhausted. The court, therefore, found that disclosure by Balk of his source was not essential to protect the public interest in the orderly administration of justice in the courts. The true identity of "Norris Vitchek" simply did not go to the heart of appellants' case, *see* Garland v. Torre, *supra,* at 550. We believe the district court properly balanced the interests competing for recognition in this case, and that its judgment refusing to compel Balk to disclose his confidential source should be upheld.

## II.

Perhaps, because the appellants did not accept the broad scope of the district court's discretion to grant or deny orders for discovery under Rule 37, they have directed their energies to establish the principle that no journalists' testimonial privilege ought to be recognized by the federal courts, relying principally upon the venerable decision by this Court in Garland v. Torre, *supra,* and upon the Supreme Court's recent decision in the *Branzburg* case, *supra.*[8] Since the Supreme Court's decision in *Branzburg* denies the existence of a principle granting an absolute newsman's testimonial privilege, we need not tarry over that question. We are of the view, however, that the two cases just cited do not control the result reached in this case, and we briefly indicate here the reasons we hold to that view.

Garland v. Torre, *supra,* involved a libel action by the actress Judy Garland against the Columbia Broadcasting System. Marie Torre, a columnist for the *New York Herald Tribune* published allegedly defamatory statements about Miss Garland, which Miss Torre attributed to a CBS executive. At a pre-trial deposition Miss Torre refused to reveal

8. For recent, but pre-*Branzburg,* discussions of newsmen's privilege *see* Kuhns, Reporters and Their Sources: The Constitutional Right to a Confidential Relationship, 80 Yale L.J. 317 (1970); Note, The Right of the Press to Gather Information, 71 Colum.L.Rev. 838 (1971).

her source, claiming a journalist's privilege under the First Amendment. The district court held her in criminal contempt and the Court of Appeals upheld the citation. The facts in the *Garland* case are wholly unlike those before us. There the record revealed that Miss Garland had taken active steps independently to determine the identity of the confidential news source. Three CBS executives were deposed: they denied making the statement in question and denied knowing the identity of the network executive referred to in the *Herald Tribune* column. In view of these denials, the identity of Miss Torre's source became essential to the libel action: in the words of this Court, it "went to the heart of the plaintiff's claim." 259 F.2d at 550. Appellants in this case, however, have not demonstrated that the identity of Mr. Balk's confidential source is necessary, much less critical, to the maintenance of their civil rights action.

The ruling in *Garland* is a carefully circumscribed one. Judge Stewart of the Sixth Circuit (now Justice Stewart), sitting by designation in this Circuit, observed that compelled disclosure of a newsman's confidential sources unquestionably raises serious constitutional issues, and that any infringement upon First Amendment rights is justified only in view of an overriding public interest in " 'the right to sue and defend in the courts . . . [a] right conservative of all other rights [which] lies at the foundation of orderly government,' " 259 F.2d at 549, quoting Chambers v. Baltimore & Ohio R. Co., 207 U. S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907). The Court made it clear that its holding was strictly limited to the facts of the case, and went on to note that it was "not dealing with use of the judicial process to force a wholesale disclosure of a newspaper's confidential sources of news, nor with a case where the identity of the news source is of doubtful relevance or materiality." 259 F.2d at 549–550.

Branzburg v. Hayes (United States v. Caldwell), *supra,* involving as it did the right of a journalist to withhold disclosure of confidential sources from a grand jury investigating criminal activities, is only of tangential relevance to this case. Mr. Justice White, writing for the majority of five justices, stated that "the sole issue before [the Court] is the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime." 408 U.S. at 682, 92 S.Ct. at 2656. No such criminal overtones color the facts in this civil case. The Court in *Branzburg,* as the Court of Appeals had done in *Garland,* applied traditional First Amendment doctrine, which teaches that constitutional rights secured by the First Amendment cannot be infringed absent a "compelling" or "paramount" state interest, *see, e. g.,* NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), and found such an overriding interest in the investigation of crime by the grand jury which "[secures] the safety of the person and property of the citizen." Branzburg v. Hayes, *supra,* 408 U.S. at 700, 92 S.Ct. at 2666.

We note that Mr. Justice Powell, in a separate concurrence, emphasized the limited nature of the Court's holding, and expressly stated that in his view *Branzburg* did not compel a journalist "to give information bearing only a remote and tenuous relationship to the subject of the [grand jury] investigation." *Id.* at 710, 92 S.Ct. at 2671. Significantly, he said that even in criminal proceedings, "[t]he asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." *Ibid.*

Manifestly, the Court's concern with the integrity of the grand jury as an investigating arm of the criminal justice system distinguishes *Branzburg* from

the case presently before us. If, as Mr. Justice Powell noted in that case, instances will arise in which First Amendment values outweigh the duty of a journalist to testify even in the context of a criminal investigation, surely in civil cases, courts must recognize that the public interest in non-disclosure of journalists' confidential news sources will often be weightier than the private interest in compelled disclosure.

■ It is axiomatic, and a principle fundamental to our constitutional way of life, that where the press remains free so too will a people remain free. Freedom of the press may be stifled by direct or, more subtly, by indirect restraints. Happily, the First Amendment tolerates neither, absent a concern so compelling as to override the precious rights of freedom of speech and the press. We find no such compelling concern in this case. Accordingly, it is our view that the district court properly exercised its discretion in refusing to order Mr. Balk to disclose the identity of his journalistic source.

Affirmed.