Jack H. TAYLOR, Appellant,

v.

George MISKOVSKY, Appellee.

No. 54820.

Supreme Court of Oklahoma.

Nov. 24, 1981.

Pierson, Ball & Dowd by David Machanic and Michael Minnis, Oklahoma City, for appellant.

E. Joe Lankford and Everett J. Sweeney, Norman, for appellee.

Bob Lake Grove, Oklahoma City, for amicus curiae, The Society of Professional Journalism, Sigma Delta Chi, The Oklahoma Professional Chapter of the Society of Professional Journalism, Sigma Delta Chi.

Jerry D. Sokolosky, Oklahoma City, for amicus curiae, Oklahoma Press Ass'n and the Reporters' Freedom of the Press Committee.

BARNES, Vice Chief Justice:

This is an appeal of a conviction for direct civil contempt of Jack H. Taylor, an investigative reporter employed by the Oklahoma Publishing Company, arising out of Mr. Taylor's refusal to comply with a subpoena duces tecum, or to answer certain questions propounded to him at a deposition by Appellee's counsel in a defamation action brought by Appellee against the Oklahoma Publishing Company.

George Miskovsky, a candidate for the Democratic nomination to the United

States Senate in 1978, originally filed suit against the Oklahoma Publishing Company on August 16, 1978, in Oklahoma County, alleging that he was defamed by three news articles, an editorial, and an editorial cartoon which appeared August 11, 1978, and August 14, 1978, in The Daily Oklahoman and The Oklahoma City Times. In April of 1979, Mr. Miskovsky dismissed the suit filed in Oklahoma County and refiled it in Cleveland County. The contempts which are the subject of this appeal arose during pretrial discovery procedures in the Cleveland County litigation.

Neither the allegedly defamatory news articles, the editorial, nor the editorial cartoon were authored by Mr. Taylor, nor was he a party to the action filed by Mr. Miskovsky.

The allegedly defamatory publications arose out of a news conference called by Mr. Miskovsky on August 10, 1978. At this conference, Mr. Miskovsky repeated allegations made the previous day by Anthony Points, another candidate for the Democratic nomination, concerning then Governor David Boren, also a candidate for the Democratic nomination. Three of the news articles and the editorial complained of appeared in the August 11, 1978, editions of The Daily Oklahoman and The Oklahoma City Times. The allegedly defamatory editorial cartoon was published in The Oklahoma City Times on August 14, 1978.

Beginning on August 28, 1978, more than two weeks after the last publication complained of by Mr. Miskovsky, and eleven days after suit was filed in Oklahoma County, Mr. Taylor wrote a series of articles concerning Anthony Points. Mr. Taylor was not assigned to investigate Points until August 25, 1978, two weeks after the last allegedly defamatory publication.

In January of 1980, Mr. Miskovsky served Mr. Taylor with a subpoena duces tecum requiring Mr. Taylor to appear at a deposition on February 8, 1980, and to bring with him to such deposition "all notes, written memoranda, files, and any other written documents on David Boren, Anthony Points, and George Miskovsky." The Oklahoma Publishing Company moved to quash the subpoena, said motion being denied on February 4, 1980. On February 8, 1980, Mr. Taylor appeared for the deposition. Mr. Taylor's counsel made formal objection to the taking of the deposition on the grounds that doing so would deprive him of rights guaranteed him by the First Amendment of the United States Constitution, and the rights guaranteed him under the Constitution and Statutes of this State, specifically including the newsman's privilege statute, 12 O.S.Supp.1980, § 2506. Mr. Taylor was then deposed by counsel for Mr. Miskovsky. During such questioning, Mr. Taylor was asked to reveal the names of confidential sources he consulted for a news article authored by Mr. Taylor and printed in The Daily Oklahoman of August 28, 1978. Mr. Taylor refused to answer these questions and also refused to supply any of the documents demanded in the subpoena duces tecum.

The Trial Judge was then summoned by Mr. Miskovsky's counsel, and after hearing arguments, he ordered Mr. Taylor to answer the questions concerning the confidential sources for the August 28, 1978, article, and to produce the documents required by the subpoena duces tecum. Mr. Taylor invoked his First Amendment rights and the newsman's privilege and refused to comply with either of the orders. The Trial Judge thereupon found Mr. Taylor guilty of direct contempt of court and sentenced him to thirty days in the Cleveland County jail. From said judgment and sentence, the Appellant has perfected this appeal.

Mr. Taylor contends that the information sought was not relevant to a significant issue in the defamation action, and therefore Appellant was protected by the First and Fourth Amendments to the United States Constitution and the statutory newsman's privilege. He also contends that the thirty-day sentence imposed by the trial court was improper because it did not allow the Appellant to purge himself of the contempt.

*Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972),* was the

first clear indication by the United States Supreme Court that journalists have only a qualified privilege against compelled disclosure of confidential information sources. This qualified First Amendment privilege is one which balances competing interests and attempts to give each interest its appropriate weight in arriving at a constitutionally satisfactory result. This balancing test first made its appearance in the case of *Garland v. Torre, 259 F.2d 545 (2d Cir.), cert. den. 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958).* There, while emphasizing that the First Amendment conferred no absolute testimonial privilege upon journalists who refused to name their sources, the Court balanced the competing interests. "Freedom of the press is basic to a free society. But basic, too, are its courts of justice, armed with the power to discover truth." *Id. at 548.* The Court was not willing to give the "power to discover truth" unrestricted range. Instead, it required that the identity of the source (1) be relevant to the significant issue in the case, (2) go to the heart of the claim of the party seeking disclosure, and (3) be unavailable through alternate sources.

In *Baker v. F & F Investment, 470 F.2d 778 (2d Cir. 1972), cert. den. 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973),* the Court refused to compel a journalist to disclose at a deposition the source of a news article. Because compelled disclosure of a confidential source threatened a journalist's ability to secure information, the Court found that a proper balance between the interests of the party seeking disclosure and those of the public in the free flow of information required that relevancy, critical importance, and exhaustion of alternate sources be established before judicial power could be used to force disclosure.

*Silkwood v. Kerr-McGee, 563 F.2d 433 (10th Cir. 1977),* and *U.S.A. v. Steelhammer, 539 F.2d 373 (4th Cir. 1976),* are other Courts of Appeals' decisions adopting the tripartite balancing test enunciated in *Garland* and *Baker.* In *Silkwood,* the Court reaffirmed the *Garland-Baker* test as being constitutionally proper outside the realm of grand jury investigations and recognized that a qualified First Amendment privilege appears to be developing in civil actions.

The United States Supreme Court, in *Branzburg,* dealt with the existence of a journalist's privilege to refuse to testify before a grand jury investigating allegations of criminal activity and not with compelling a reporter to testify or provide information in a civil lawsuit. Even though the Court decided that a reporter could be compelled to testify before a grand jury, the way was expressly left open for recognition of a qualified privilege under circumstances other than those present in *Branzburg.* Mr. Justice White, writing for the majority said: "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated." *408 U.S. at 681, 92 S.Ct. at 2656, 33 L.Ed.2d at 639.*

In *Branzburg,* the United States Supreme Court also noted the merit of States' adopting their own newsman's privilege standards within First Amendment limits. *408 U.S. at 706, 92 S.Ct. at 2669, 33 L.Ed.2d at 654.* The Oklahoma Legislature adopted such a newsman's privilege in 1974.[1] 12 O.S. Supp. 1980, § 2506(B), provides:

"B. No newsman shall be required to disclose in a state proceeding either:

"1. The source of any published or unpublished information obtained in the gathering, receiving or processing of information for any medium of communication to the public; or

"2. Any unpublished information obtained or prepared in gathering, receiving or processing of information for any medium of communication to the public; unless the court finds that the party seeking the information or identity has established by clear and convincing evidence that such information or identity is relevant to a significant issue in the action and could not with due diligence be obtained by alternate means.

"This subsection does not apply with respect to the content or source of al-

---

1. See 1974 Okla. Session Laws, c. 123, § 1–3.

legedly defamatory information, in a civil action for defamation wherein the defendant asserts a defense based on the content or source of such information."

For the reasons stated in our discussion of the qualified First Amendment privilege and the balancing test required thereunder, we find that the Legislature was "within" First Amendment limits in its framing of the newsman's privilege statute which was subsequently codified as 12 O.S. Supp. 1980, § 2506.

Having set out the perimeters of the First Amendment qualified newsman's privilege which is embodied in our newsman's privilege statute, we now turn to the question of whether Appellant in this case properly invoked such privilege. The order of contempt arose out of Appellant's refusal to answer questions concerning his confidential sources for his article of August 28, 1978, and Appellant's refusal to provide Appellee with his files, memoranda, and documents on Boren, Points and Miskovsky. Whether or not Appellant's sources or files were clearly and convincingly relevant to a significant issue in the underlying lawsuit is the main issue of this appeal.

Appellee contends that Appellant's sources and files were relevant to the issue of malice, as defined in *New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).*[2]

Appellant was assigned to an investigation of Anthony Points on August 25, 1978, and wrote a series of articles concerning Points beginning August 28, 1978. Mr. Miskovsky's lawsuit had already been on file nearly two weeks. All of the articles complained of by Mr. Miskovsky as being defamatory in his lawsuit were published no later than August 14, 1978, eleven days before Appellant began his investigation. How can confidential sources and files obtained by Appellant in this case nearly two weeks after Appellee filed his lawsuit and obtained by Appellant from sources contacted eleven days after publication of the alleged defamatory articles be relevant to the issue of actual malice at the time of the publication of such alleged defamatory articles? The state of mind or knowledge required for actual malice must be determined at the time of the writing and publishing of the complained-of material.[3]

The evidence also reflects that Appellant was neither the author of the alleged defamatory material, nor was he a party to the pending cause of action. Further and more significantly, there is no evidence that those responsible for the publication of the alleged defamatory publications in the instant case had any knowledge of information possessed by Appellant concerning the subject matter of the publications prior to publication. The confidential sources for an article by Appellant published August 28, 1978, and the notes and memoranda of Appellant's concerning Miskovsky, Boren and Points would only be relevant to the issue of actual malice if they were relied upon by the authors of the offending publications or the persons who gave prior approval to them. However, the record clearly shows that the authors and approver of the publications did not have prior access to or knowledge of Appellant's confidential sources or anything contained in Appellant's memoranda, notes, et cetera. *New York Times Co. v. Sullivan, supra,* requires that a public-figure defamation plaintiff must prove that knowledge was possessed by the author of the publication or the person who approved it.

In *New York Times Co. v. Sullivan, supra, 376 U.S. at 287–288, 84 S.Ct. at 730, 11 L.Ed.2d at 710–711,* the newspaper had the true facts in its possession, but discovered

2. The United States Supreme Court, in *New York Times Co. v. Sullivan,* held that:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'——that is with knowledge that it was false or with reckless disregard of whether it was false or not." *376 U.S. at 280, 84 S.Ct. at 726, 11 L.Ed.2d at 706.*

3. See *New York Times Co. v. Sullivan, 376 U.S. at 286 through 288, 84 S.Ct. at 729–730, 11 L.Ed.2d at 710–711.*

 

them only after publication, and the Court held this insufficient proof of prior knowledge of falsity "since the state of mind required for actual malice would have to be brought home to the persons in the Times organization having responsibility for the publication of the advertisement."

Title 12 O.S. Supp. 1980, § 2506(B)(2), requires that (1) the evidence be clear and convincing that the information sought is relevant to a significant issue, and (2) that the information could not with due diligence be obtained by alternate means. The burden of establishing these requirements is upon the Appellee; however, as discussed above, the record is void of any evidence to reflect that the Appellee met this burden of proof. Further, it appears that the court was not even sure whether the information sought from the Appellant was material, much less clear and convincing, and the court also failed to find that the information sought could not with due diligence be obtained by alternate means. Thus, the trial court's orders requiring Appellant to divulge his sources and produce his files were defective, as they did not meet the statutory requirements as set forth above.

The Oklahoma Publishing Company did not assert a defense based upon the content or sources of the information obtained by the Appellant, nor was there any showing that the Appellant had any connection with the alleged defamatory publications. The final paragraph of 12 O.S. Supp. 1980, § 2506(B)(2), is therefore inapplicable to the circumstances of the present case.

We therefore hold that since Appellee did not meet his burden of proof that the information sought concerning Appellant's sources and files was relevant to a significant issue in his defamation lawsuit in accordance with the requirements of the qualified newsman's First Amendment privilege, as codified in 12 O.S. Supp. 1980, § 2506, the orders of the trial court requiring disclosure therefore were defective and the consequent judgment of direct civil contempt [4] is hereby reversed.

In light of the above, we deem it unnecessary to review and determine Appellant's other allegations of error.

REVERSED.

IRWIN, C.J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and OPALA, JJ., concur.

---

4. See *ITT Community Development Corporation v. Barton, 569 F.2d 1351, 1356 (5th Cir. 1979)*, which held that: "It is a well established principle that an order of civil contempt cannot stand if the underlying order on which it was based is invalid."