**Martha von BULOW, by her next friends Alexander AUERSPERG and Annie Laurie Auersperg Kneissl, Plaintiff,**

v.

**Claus von BULOW, Defendant.**

**No. 85 Civ. 5553 (JMW).**

United States District Court, S.D. New York.

Oct. 14, 1986.

See also, 114 F.R.D. 71.

Frederic W. Parnon, Michael F. Armstrong, Karen Quackenbos, Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for plaintiff.

John S. Siffert, New York City, for defendant.

## OPINION

WALKER, District Judge:

### STATEMENT OF FACTS

Plaintiffs have brought the instant action on behalf of Martha von Bulow, alleging, *inter alia*, that Defendant Claus von Bulow placed his wife into her current state of a permanent coma by surreptitiously injecting her with insulin and other drugs. Plaintiffs' complaint alleges claims sounding in common law tort, common law fraud, and the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").

Plaintiffs seek to compel discovery from Andrea Reynolds ("Reynolds"), a close acquaintance of Defendant Claus von Bulow and his steady companion during Rhode Island state criminal proceedings which resulted in his acquittal on charges of assault with intent to murder his wife. Specifically, plaintiffs seek a current draft of a book Reynolds is preparing on defendant's Rhode Island criminal trial, together with related notes submitted to this Court *in camera*. Reynolds, appearing *pro se*, has refused to comply with these discovery requests. She contends that the materials sought by plaintiffs are protected from discovery by the journalist's privilege. For the reasons set forth, this Court concludes that the privilege is not applicable and directs production of the materials in question.

### DISCUSSION

*Journalist's Privilege*

A journalist's privilege is recognized in the Second Circuit.[1]  *United States v.*

*Burke,* 700 F.2d 70 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *Baker v. F & F Investment,* 470 F.2d 778 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). Other circuits have also recognized this privilege. *See, e.g., Zerilli v. Smith,* 656 F.2d 705 (D.C.Cir.1981); *United States v. Cuthbertson,* 630 F.2d 139 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).

■ Plaintiffs do not challenge the existence of this privilege;[2] rather they contend that Reynolds has not made a sufficient showing that she is in the class of persons entitled to invoke the privilege. In other words, plaintiffs argue that Reynolds is not a "journalist." For the reasons set forth, this Court agrees.

"[W]e start with the primary assumption that there is a general duty to give what testimony one is capable of giving and any exceptions which exist are distinctly exceptional...." 8 Wigmore on Evidence § 2192, at 70 (McNaughton ed. 1961). Moreover, "[e]videntiary privileges in litigation are not favored and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979); *accord In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

Is is true that "[l]iberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods" *Branzburg v. Hayes,* 408 U.S.

---

1. Where a federal court's jurisdiction arises both out of diversity and the presence of a federal claim, federal case law applies to any claim of privilege. *See Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458 (N.D.Cal.1978).

2. The journalist's privilege is of a qualified nature, and a court may order disclosure "upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not

obtainable from other available sources." *United States v. Burke,* 700 F.2d 70, 77 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7–8 (2d Cir.1982), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). Since this Court finds that Reynolds does not fall within that group of potential witnesses who may invoke the reporter's privilege, any questions concerning the materiality and availability of the materials she seeks to protect need not be reached.

665, 704, 92 S.Ct. 2646, 2668, 33 L.Ed.2d 626 (1972); however, not every potential witness may seek to avoid discovery by invoking the reporter's privilege. Unjustified assertions of the reporter's privilege impede the administration of justice without advancing any first amendment interests.

The broad definitional approach suggested in *Branzburg* has received little elaboration in the federal courts. However, in *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), handed down the same day as *Branzburg,* the Court rejected the proposition that an individual not actively involved in the dissemination of topical information may withhold otherwise discoverable material. In *Gravel,* an aide to United States Senator Mike Gravel sought to quash a grand jury subpoena relating to the possibly criminal release of classified material on the Vietnam War, which eventually became known as the "Pentagon Papers." Although the opinion in *Gravel* focused primarily on the holding that the speech and debate clause of the United States Constitution, Article I, § 6, did not provide a basis for quashing the subpoena, the Court also held that the aide could not refuse to provide otherwise discoverable material by invoking the journalist's privilege or any similar privilege. *Id.* at 627, 92 S.Ct. at 2628. Of particular relevance to the instant case, the Court found that work by the Senator and his aide on an upcoming book concerning the Pentagon Papers did not provide a basis for quashing the subpoena. *See id.* at 622–27, 92 S.Ct. at 2625–28.

Federal cases allowing a potential witness to invoke the journalist's privilege have premised its availability upon some involvement of the witness in activities commonly associated with the gathering and dissemination of current or topical information in a timely fashion. Thus, cases have upheld assertions of privilege by persons, even though not regularly employed by a recognized news agency, if they were actively engaged in the reporting and editing of newsworthy information. For example, in *United States v. Burke,* 700 F.2d 70, 76–78 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), the Court of Appeals held that a participant in a gambling fraud scheme who subsequently published an article on his illegal activities could properly invoke the journalist's privilege. Similarly, the Court of Appeals held that the journalist's privilege prevented discovery of confidential sources from a Columbia Journalism Review editor who had used those sources to write a *Saturday Evening Post* article on blockbusting. *Baker v. F & F Investment,* 470 F.2d 778, 780–81 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). *See also Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78, 84–85 (E.D.N.Y.1975) (upholding assertion of privilege by the chief executive officer of *The Medical Letter on Drugs and Therapeutics,* a technical journal with a circulation of 70,000 readers).

Although relatively few federal cases have attempted to delineate those individuals qualified to invoke the journalist's privilege, a number of states have formulated such definitions in "shield laws" which protect reporters from discovery. As of 1980, some 26 states had enacted such shield laws. Comment, *The Newsman's Qualified Privilege: An Analytical Approach,* 16 Cal.W.L.Rev. 331, 368 n. 284 (1980). Since it is appropriate that federal courts refer to relevant state law in developing federal rules of privilege, *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D. N.Y.1984); *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976), this Court takes note of the definitions of those grouped as journalists under state shield statutes.

■ State legislatures typically have protected the confidential information possessed by individuals who are engaged in the gathering and dissemination of news. For example, the New York shield law allows invocation of a journalist's privilege by any individual "engaged in gathering, preparing, collecting, writing, editing, filming, taping or photographing of news for a

newspaper, magazine, news agency, press association or wire service or other professional medium or agency" or "analyzing, commenting on or broadcasting, news by radio or television transmission." N.Y.Civ. Rights Law § 79–h(a)(6), h(a)(7) (McKinney Supp.1986). California provides its journalist's privilege to those individuals who serve as "[a] publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, other periodical publication, or by a press association or wire service ..." Cal.Evid.Code § 1070 (West Supp.1986). In New Jersey, this privilege may be invoked by "a person engaged in, connected with, or employed by news media for the purpose of gathering, procuring, transmitting, compiling, editing, or disseminating news for the general public...." N.J.Stat.Ann. § 2A:84A–21 (West Supp.1985). These definitions in state shield laws provide support for this Court's conclusion that for protection under the journalist's privilege to be available to a witness that witness must be actively involved in the gathering and dissemination of news.

■ The burden is on Reynolds to show the applicability of the journalist's privilege since "[i]t is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are essential elements of the privileged relationship...." *In re Grand Jury Subpoena,* 750 F.2d 223, 224 (2d Cir.1984); *accord United States v. Stern,* 511 F.2d 1364, 1367 (2d Cir.), *cert. denied,* 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975). Reynolds has not met this burden.

■ Viewed in the context of existing statutory and decisional authority, Reynolds' claim that the documents in question are privileged because of her status as a journalist falls short of the mark. Reynolds rests her claim of privilege on two grounds. First, Reynolds claims that she recently published a single article that appeared in the German magazine *Stern.* Second, she states that the New York Post newspaper issued a press pass to her during the defendant's criminal proceedings.

However, the *Stern* article identifies Reynolds' husband, Sheldon Reynolds, rather than Reynolds herself as the author, and Reynolds admits that the Post never published any article that she wrote. Based on these facts, this Court is unable to conclude that Reynolds was engaged in any meaningful way in the gathering and dissemination of news while she attended von Bulow's criminal trial. Further, she has not demonstrated that the notes and book manuscript sought by plaintiffs are related to any purported journalistic activities, whether for *Stern* magazine, the New York Post or any other publication other than a possible book of her own.

The facts of the instant case are strikingly similar to those found insufficient by a New York state appellate court to justify a journalist's privilege claim. In *People v. Le Grand,* 67 A.D.2d 446, 415 N.Y.S.2d 252 (2d Dep't 1979), the privilege claimant had attended several criminal trials and, like Reynolds, had planned to author a book about the group of defendants involved in those trials. In denying the author's invocation of the journalist's privilege, an appellate division panel wrote that New York's statutory provisions "evince a clear legislative design to benefit 'professional journalists' and 'newscasters' only. They should not by judicial fiat and strained interpretation be deemed to encompass those engaged in a different field of writing and research." *Id.* at 451, 415 N.Y. S.2d at 255. *See also Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *In re Grand Jury Subpoena,* 750 F.2d 223, 225 (2d Cir.1984) (denying invocation of a "scholar's privilege" based on an incomplete Ph.D. thesis because the claimant had failed to make a "threshold showing consisting of a detailed description of the nature and seriousness of the scholarly work in question ...")

These considerations compel this Court to deny Reynolds' claim of a journalist's privilege.

*Confidentiality of Reynolds' Materials*

Plaintiffs have represented to this Court that they will "submit a proposed order

governing the confidentiality of the above documents." Accordingly, this Court directs plaintiffs and Reynolds to submit an appropriate stipulation or to settle a form of order within seven days of the date of this memorandum providing for appropriate confidentiality and limiting disclosure to the plaintiffs' attorneys and their "next friend" clients solely for the purpose of this litigation. The documents shall remain in the offices of plaintiffs' attorneys and neither the documents nor any copies may be removed therefrom except for use by plaintiffs' attorneys during depositions or at trial. At the conclusion of the litigation, all copies are to be returned promptly to Reynolds. Upon this Court's endorsement of the stipulation or order protecting confidentiality, the *in camera* materials will be turned over to plaintiffs and Reynolds is directed to provide plaintiffs with a copy of her manuscript.

### CONCLUSION

Plaintiffs' motion to compel discovery is granted.

SO ORDERED.