**Maureen M. WARZON, Plaintiff,**

v.

**William R. DREW and Milwaukee County, Defendants.**

No. 93–C–179.

United States District Court, E.D. Wisconsin.

May 17, 1994.

Sutton & Kelly, by Walter F. Kelly, Milwaukee, WI, for plaintiff.

Robert E. Andrews, Corp. Counsel, Milwaukee, WI, for Drew and Milw. County.

Michael J. Losse, Asst. Atty. Gen., Madison, WI, for Governor & Secretary.

Foley & Lardner by James L. Huston, Milwaukee, WI, for Enriquez.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

Before the court are the following discovery motions: (1) "Motion for a Protective Order to Quash Subpoenas Served Upon Wisconsin Governor Tommy G. Thompson and Secretary of the Department of Administration James R. Klauser"; and (2) Darryl Enriquez' "Non–Party Motion to Quash." Both of the motions will be granted.

The underlying action stems from Ms. Warzon's termination on February 4, 1993, from her position as the controller for Milwaukee County. In her complaint, Ms. Warzon alleges that such termination was unlawful in that it violated her employment contract and her right to due process under the Fourteenth Amendment to the United States Constitution, and was done in retaliation for commenting on the operation of the Milwaukee County Health Care Plan in violation of her First Amendment right to exercise free speech.

Deposition subpoenas were served by the plaintiff, on the Governor, the Secretary and Mr. Enriquez, a newspaper reporter employed by the Milwaukee Journal. None of the subpoened witnesses is a party in this action. Each of the subpoenas directed the witness to appear for a deposition on March 31, 1994, and to produce various designated documents. In response to Ms. Warzon's subpoenas, the witnesses filed the motions presently before the court.

Rule 26(b)(1), Federal Rules of Civil Procedure, establishes the general scope and limits of discovery. The rule states:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will

be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

### I. Motion of the Governor and the Secretary

The subpoena directed to the Governor commands him to appear and produce:

> [a]ny and all documents or notes ... including without limitation by way of this specification, any and all datebook entries, minute book entries, agenda items, informal or handwritten notes, and/or calendars, of, pertaining to, concerning, memorializing, or recording meetings and/or telephone conversations involving [the Governor] and or James R. Klauser, and William R. Drew, and/or F. Thomas Ament, or either one of them, for the period of time between October 15, 1992 and the present.

The subpoena directed to the Secretary is in substantially the same form except that the production request relates to documents concerning:

> meetings and/or telephone conversations about Milwaukee County's budget and state financial support for Milwaukee County and involving [the Secretary], and/or Nicholas Hurtgen, and/or Gov. Tommy G. Thompson, and William R. Drew, and/or F. Thomas Ament, or either one of them, for the period of time between October 15, 1992 and the present.

In affidavits accompanying their joint motion for a protective order, the Governor and the Secretary each states that he has no relevant information or knowledge concerning the facts and issues of Ms. Warzon's underlying civil lawsuit. (Notice and Motion for a Protective Order, Exs. 3 and 4.) Furthermore, the Governor and Secretary each claims that as a high ranking government official he is privileged from being subject to depositions absent extraordinary circumstances.

In response, Ms. Warzon does not dispute the right of the Governor and the Secretary to claim this privilege; rather, she argues that extraordinary circumstances exist in this case which justify deposing the Governor and the Secretary.

In general, high ranking government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge. The immunity is warranted because such officials must be allowed the freedom to perform their tasks without the constant interference of the discovery process. *In re U.S.*, 985 F.2d 510, 512 (11th Cir.), *cert. denied sub nom. Faloon v. U.S.*, —— U.S. ——, 114 S.Ct. 545, 126 L.Ed.2d 447 (1993); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231–32 (9th Cir.1979). Before the involuntary depositions of high ranking government officials will be permitted, the party seeking the depositions must demonstrate that the particular official's testimony will likely lead to the discovery of admissible evidence and is essential to that party's case. *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir.), *cert. denied sub nom. Schenberg v. Bond*, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). In addition, the evidence must not be available through an alternative source or via less burdensome means.

Ms. Warzon contends that the depositions of the Governor and the Secretary would help her determine whether there was an agreement between Mr. Drew and the Thompson administration pursuant to which the County Executive of Milwaukee County, F. Thomas Ament, would "remain neutral" should Milwaukee Mayor John Norquist challenge the Governor in the 1994 election. (Plaintiff's Memorandum Supporting Subpoenaed Testimony at 2–3, 7.) Ms. Warzon does not claim to have any personal knowledge that this deal was actually made; instead, she states that she was told about the deal by a co-employee, Earl Hawkins. (Warzon Aff. at 409–10.)

Ms. Warzon maintains that the testimony of the Governor and the Secretary is necessary to her case because "if Mr. Hawkins did, ..., tell [her] that the State would help the County resolve its Health Care Plan funding problem in exchange for the County Executive's neutrality in a 1994 Norquist–Thompson race, then that would tend *strongly* to support [her] allegation that she was fired

due to her statements on the Health Care Plan." (Plaintiff's Memorandum Supporting Subpoenaed Testimony at 7.) (Emphasis in original.)

Whether Mr. Hawkins did or did not tell Ms. Warzon about the existence of any deal is a matter within the knowledge of Mr. Hawkins—not the Governor or the Secretary. When deposed, Mr. Hawkins denied any knowledge of a deal between Mr. Drew and the Thompson administration and denied making a statement to Ms. Warzon about the alleged deal. (Brief in Support of Motion for a Protective Order, Ex. C at 145–49.)

That Ms. Warzon has been unable to obtain any direct evidence to corroborate her "deal" theory does not entitle her to interrogate the Governor and the Secretary. This is especially true in this case where the record discloses that deposing the Governor and the Secretary would not yield any testimony to corroborate Ms. Warzon's "deal" theory. The Governor and the Secretary each submitted an affidavit asserting that the arrangement described by Ms. Warzon was never reached nor discussed. (Notice of and Motion for a Protective Order, Ex. 3 at ¶ 6 and Ex. 4 at ¶¶ 5 and 6.) Aside from unsubstantiated hearsay, Ms. Warzon has not produced any evidence to the contrary.

In my opinion the testimony of the Governor or the Secretary is not likely to lead to the discovery of admissible evidence nor is it essential to Ms. Warzon's action. *Sweeney*, 669 F.2d at 546. Because Ms. Warzon has failed to establish that exigent circumstances justify compelling the Governor and the Secretary to testify and produce documents, I believe there is good cause to order that the requested disclosure not be had. *See* Rule 26(c), Federal Rules of Civil Procedure. Accordingly, I will grant the motion of the Governor and the Secretary for a protective order to quash the subpoenas for deposition and production of documents.

## II. Motion of Darryl Enriquez

### A. Law

Mr. Enriquez' motion to quash the subpoena claims that the demanded information concerning his investigations would violate his First Amendment privilege against compelled disclosure. In response, Ms. Warzon argues that no such privilege exists. In the alternative, she urges that if a privilege exists, it should yield to her need for the disclosure.

Mr. Enriquez and Ms. Warzon both point to the decision of the United States Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), as support for their respective positions. In *Branzburg,* the Supreme Court held that a journalist is not entitled to assert a privilege to resist disclosure before the grand jury.

To date, the court of appeals for the seventh circuit has not had occasion to apply *Branzburg,* nor has it addressed the issue of whether a journalist may assert a privilege—qualified or absolute—to resist compulsory disclosure in a criminal or civil proceeding. Among the ten circuit courts which have confronted this issue, nine have acknowledged the existence of a *qualified* journalist's privilege to resist compelled disclosure under certain circumstances. In reaching their respective conclusions, these courts have all discussed *Branzburg* and have arrived at differing interpretations of its scope. *E.g. Farr v. Pitchess,* 522 F.2d 464, 467–68 (9th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976) (*Branzburg* merely rejected a journalist's right to assert an absolute privilege—as opposed to a qualified privilege—in a *criminal* proceeding); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 594 (1st Cir.1980) (*Branzburg* rejects any journalist's privilege—absolute or qualified—in *criminal* proceedings); *In re Grand Jury Proceedings,* 810 F.2d 580, 584 n. 6 (6th Cir.1987) (*Branzburg* establishes that there is no journalist's privilege, of any kind, in a *criminal or civil* proceeding). The question presented in the instant motion—whether a qualified privilege is available to a journalist in a *civil* matter—is a question left open by the Supreme Court.

Of the courts which have determined that *Branzburg* is not controlling in civil matters, all have recognized the existence of a limited or qualified privilege in favor of a journalist in civil proceedings. *See Baker v. F & F Investment,* 470 F.2d 778, 781 (2d Cir.1972),

*cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Carey v. Hume,* 492 F.2d 631 (D.C.Cir.), *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *Riley v. City of Chester,* 612 F.2d 708, 715 (3d Cir.1979); *Bruno & Stillman, Inc.,* 633 F.2d at 596–97.

■ In order to accommodate the limited First Amendment rights of a journalist witness in a civil proceeding, it is necessary for courts to balance a litigant's professed need for the information sought against the asserted claim of a journalist's privilege. *See Zerilli v. Smith,* 656 F.2d 705, 712 (D.C.Cir. 1981); *Riley,* 612 F.2d at 716; *Carey,* 492 F.2d at 636; *Baker,* 470 F.2d at 783.

■ There are several guidelines to be applied to determine how the balance should be struck in a particular case. For instance, a showing by the requesting party that there is no other source for the information requested is important. *E.g. Shoen v. Shoen,* 5 F.3d 1289, 1296 (C.A.9 1993); *Zerilli,* 656 F.2d at 713; *Bruno & Stillman, Inc.,* 633 F.2d at 598; *Riley,* 612 F.2d at 716–17. "[R]eporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information." *Zerilli,* 656 F.2d at 713.

The civil litigant's need for the information sought is also significant. If the information is "crucial" to that party's case, "then the argument in favor of compelled disclosure may be relatively strong." *Zerilli,* 656 F.2d at 713. *See also Carey,* 492 F.2d at 636. If the information sought is only minimally relevant, it may be difficult to justify disclosure.

### B.  *Analysis*

■ It is undisputed that the subpoena served upon Mr. Enriquez seeks disclosure of material obtained or created by Mr. Enriquez in his capacity as a newspaper reporter. Hence, he may be entitled to a qualified protection from disclosure. *See U.S. v. Cuthbertson,* 630 F.2d 139, 147 (3d Cir.1980), *cert. denied sub nom. Cuthbertson v. CBS, Inc.,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981) (citing *Loadholtz v. Fields,* 389 F.Supp. 1299, 1303 (M.D.Fla.1975)). In a

purely conclusory assertion, Mr. Enriquez claims that some of the information he obtained as a result of his investigation surrounding the Milwaukee County Health Care Plan was provided under a promise of confidentiality. (Enriquez Aff. at ¶ 5.)

In response, Ms. Warzon contends that the information she seeks is crucial to her lawsuit. She points to a letter from her counsel to Mr. Enriquez' counsel to explain the necessity and relevancy of the information she requests. The letter provides:

I believe, *though I do not know for sure,* that Mr. Enriquez's notes, other records, and/or recollections include information as to the dates, times, places, and contents of his conversations with or efforts to converse concerning the Health Care Plan with Mr. Drew, Mr. Hawkins, Mr. Ament, or other officials that does not elsewhere exist or that may be at odds with others' version of the events.

(Kelly Aff. Ex. 2.) (Emphasis added.)

Aside from the notes and personal recollections of Mr. Enriquez, (the relevancy of which is in doubt), all other material sought by Ms. Warzon from Mr. Enriquez would appear to be available from other sources. (Enriquez Aff. at ¶¶ 3 and 4.) Such sources include Ms. Warzon herself, Terry Brauer, a consultant engaged by Milwaukee County and the custodian of Milwaukee County public records.

Although the First Amendment rights of Mr. Enriquez are not absolute, I believe that the better exercise of my discretion warrants the granting of his motion to quash his subpoena.

### III.  *Award of Expenses*

■ Pursuant to Rules 26(c) and 37(a)(4), Federal Rules of Civil Procedure, in motions such as those decided herein, the losing party may be required to pay the other side's expenses. In my opinion, Ms. Warzon was not substantially justified in her insistence that the Governor and the Secretary be deposed. No other circumstances appear which make an award of expenses unjust. Accordingly, I will order that Ms. Warzon is responsible to pay the reasonable attorney's

fees and costs incurred by the Governor and the Secretary in seeking a protective order to quash their subpoenas.

The Governor and Secretary will be directed to serve and file a statement of just costs and reasonable attorney's fees no later than Friday, June 10, 1994. Ms. Warzon may serve and file her objections, if any, no later than Wednesday, June 22, 1994.

■ With respect to the motion filed by Mr. Enriquez, I believe that Ms. Warzon was substantially justified in contending that Mr. Enriquez be deposed. This is so in view of the lack of clear and controlling precedent on the issue of a journalist's entitlement to assert a First Amendment right as a basis for resisting compelled disclosure in a civil proceeding. Thus, Ms. Warzon will not be required to pay the expenses incurred by Mr. Enriquez in connection with the latter's motion to quash.

### ORDER

Therefore, IT IS ORDERED that the "Motion for a Protective Order to Quash Deposition Subpoenas Served Upon Governor Tommy G. Thompson and Secretary of Department of Administration James R. Klauser" be and hereby is granted.

IT IS ALSO ORDERED that Ms. Warzon be and hereby is required to pay the just costs and reasonable attorney's fees incurred by the Governor and the Secretary in connection with their motion for a protective order.

IT IS FURTHER ORDERED that the Governor and Secretary be and hereby are directed to serve and file a statement of just costs and reasonable attorney's fees no later than Friday, June 10, 1994.

IT IS FURTHER ORDERED that Ms. Warzon may serve and file her objections, if any, no later than Wednesday, June 22, 1994.

IT IS FURTHER ORDERED that the motion of Darryl Enriquez to quash Ms. Warzon's subpoena be and hereby is granted, without costs or attorney's fees.