6 F.3d 67
 21 Media L. Rep. 2075
 UNITED STATES of America, Appellee,
v.
Bruce CUTLER, Defendant-Appellee,
Jerry Capeci, Tom Robbins, Kevin McLaughlin, Selwyn Raab,
Arnold Lubasch, Peter Bowles, Kevin McCoy, Anthony
DeStefano, CBS Inc., James Nolan, Karen
Phillips and Television
Station WNYW, Appellants.
 Nos. 2071-2082, Docket 93-6160, 93-6166, 93-6168, 93-6170,
93-6172, 93-6174, 93-6176, 93-6178, 93-6180,
93-6182, 93-6184, 93-6186.
 United States Court of Appeals,
Second Circuit.
 Argued July 16, 1993.
Decided Sept. 23, 1993.
 
 John J. Gallagher, Sp. Prosecutor, New York City (Kelly D. Talcott, Corbin Silverman & Sanseverino, New York City, of counsel), for appellee.
 Frederick P. Hafetz, New York City (Susan R. Necheles, Goldman & Hafetz, Robert F. Katzberg, Kaplan & Katzberg, New York City, of counsel), for defendant-appellee.
 R. Bruce Rich, New York City (Eve B. Burton, Weil, Gotshal & Manges, New York City, of counsel), for appellants Capeci and Robbins.
 Anthony M. Bongiorno, New York City (Douglas P. Jacobs, New York City, of counsel), for appellant CBS Inc.
 Gibson, Dunn & Crutcher, New York City (Robert D. Sack, Edward T. Ferguson, III, Karen A. Odom, New York City, Christopher J. Nolan, Melville, Carolyn Schurr, New York City, of counsel), for appellants Bowles, DeStefano, and McCoy.
 George Freeman, Adam Liptak, New York City, for appellants Lubasch and Raab.
 Jan F. Constantine, New York City, for appellants McLaughlin, Nolan, and Phillips.
 Muriel Henle Reis, New York City, for appellant WNYW (Fox Television Stations, Inc.).
 Jonathan C. Scott, New York City, submitted a brief amicus curiae for the New York Ass'n of Criminal Defense Lawyers.
 Before: MAHONEY, McLAUGHLIN, and JACOBS, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Appellants Jerry Capeci, Tom Robbins, Kevin McLaughlin, Selwyn Raab, Arnold Lubasch, Peter Bowles, Kevin McCoy, Anthony DeStefano, James Nolan, and Karen Phillips (the "Reporters"), and CBS Inc. ("CBS") and WNYW (Fox Television Stations, Inc.) ("WNYW") (collectively the "TV Stations"), appeal from an order entered June 22, 1993 in the United States District Court for the Eastern District of New York, Thomas C. Platt, Chief Judge. The challenged order of the district court (1) denied appellants' motions to quash subpoenas served by defendant-appellee Bruce Cutler in connection with an ongoing criminal contempt proceeding against him; and (2) held appellants in contempt for (a) the refusal of the Reporters to testify and produce unpublished notes concerning (i) interviews of Cutler related to certain published articles about Cutler and one of his clients, John Gotti (the "Articles"), and (ii) statements by government officials (the "Government Officials") connected with the case United States v. Gotti, 90 CR 1051(ILG) (E.D.N.Y.1992) (the "Gotti Case") concerning Gotti or the Gotti Case; and (b) the refusal of the TV Stations to testify and produce video outtakes (i.e., tape footage that was not broadcast) regarding interviews of Cutler that they broadcast (the "Outtakes").
 
 
 2
 We conclude that the district court properly denied the motions insofar as they sought to quash the subpoenas' demand to produce the Reporters' testimony and unpublished notes regarding statements made by Cutler to the Reporters in connection with the Articles, and the Outtakes. We also conclude, however, that the court erred in denying the motions insofar as they sought to quash the subpoenas' demand to produce the Reporters' testimony and notes concerning statements by the Government Officials concerning Gotti and the Gotti Case. We accordingly affirm in part and reverse in part the order of the district court.
 
 Background
 
 3
 The criminal contempt proceeding that gives rise to this appeal originated with the Gotti Case, in which Cutler served as Gotti's trial counsel until Cutler was disqualified in August 1991. SeeUnited States v. Gotti, 771 F.Supp. 552, 553, 567 (E.D.N.Y.1991). Prior to Cutler's disqualification, Judge I. Leo Glasser, who was presiding over the Gotti trial, had warned counsel for both sides on December 21, 1990, January 9, 1991, and July 22, 1991 to comply with Rule 7 of the Criminal Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 7"). SeeUnited States v. Cutler ("Cutler II "), 815 F.Supp. 599, 601-05 (E.D.N.Y.1993).[1]
 
 Rule 7 provides in part:
 
 4
 (a) It is the duty of the lawyer ... not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending ... criminal litigation with which a lawyer ... is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.
 
 
 5
 Further, the rule specifies that lawyers shall not release extrajudicial statements that a reasonable person would expect to be publicly disseminated concerning, inter alia, "the character or reputation of the accused," "[t]he identity, testimony or credibility of prospective witnesses," or "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case." Id. However, the rule explicitly does not "preclude any lawyer from replying to charges of misconduct that are publicly made against said lawyer." Id.
 
 
 6
 During the course of his representation of Gotti in the Gotti Case, and following his disqualification, Cutler was quoted in numerous newspaper articles making statements about Gotti and the Gotti Case, and appeared on several television programs during which he commented extensively on those subjects. SeeCutler II, 815 F.Supp. at 602-06. In November 1991, in response to these public comments, Judge Glasser appointed a special prosecutor " 'to prosecute, on behalf of the United States, Bruce Cutler for criminal contempt in that Bruce Cutler intentionally and wilfully violated the orders of this court and Local Criminal Rule 7.' " United States v. Cutler ("Cutler I "), 796 F.Supp. 710, 710-11 (E.D.N.Y.1992) (quoting order of appointment). In April 1992, Judge Glasser signed an order to show cause why Cutler should not be held in criminal contempt for violation of Judge Glasser's prior directions to comply with Rule 7. See id. at 711; supra note 1 and accompanying text. Judge Glasser then recused himself from the contempt proceeding, which was reassigned by random selection to Chief Judge Platt.
 
 
 7
 In preparation for a nonjury trial of this matter before Chief Judge Platt, the special prosecutor and defense counsel for Cutler served subpoenas upon the Reporters and the TV Stations. The special prosecutor's subpoenas to the Reporters called for the testimony of each of the Reporters "regarding the statements actually reported and attributed to Bruce Cutler" in the article(s) written by each reporter. His subpoenas to WNYW requested "[c]opies of televised news reports referring or relating to John Gotti that were actually broadcast on Fox's New York City local news program" on dates between December 12, 1990 and August 13, 1991. His subpoena to CBS requested a "copy of the television program '60 Minutes' that was actually broadcast on Channel 2 (New York)" on April 7 and August 11, 1991.
 
 
 8
 Defense counsel's subpoenas to the Reporters required the production of "[a]ny and all notes of any interviews of any person concerning the [article(s) written by that reporter]" and "[a]ll notes of any statements made by government officials, including but not limited to prosecutors, FBI agents, and any other employees of the United States Attorneys [sic] Office or the Justice Department concerning [the Gotti Case] and John Gotti." Defense counsel's subpoenas to WNYW requested a number of videotapes broadcast by WNYW from local and national news concerning the Gotti Case and related events, and "[a]ll videos, whether broadcast or not, of the Gotti trial or Bruce Cutler" for news programs on four specified dates. Defense counsel's subpoenas to CBS requested "[a]ll videos of segments that were broadcast concerning the John Gotti trial for the period of August 1, 1991 through and including August 12, 1991 from the local and national news," and "[a]ll videos filmed in the production of the '60 Minutes' story called 'Brucification,' broadcast on April 7, 1991 and rebroadcast on August 11, 1991, concerning Bruce Cutler and John Gotti whether or not those segments were actually broadcast."[2]
 
 
 9
 The Reporters and the TV Stations moved to quash or, in the alternative, to modify the subpoenas on the ground that the scope of the subpoenas, particularly those of defense counsel, contravened the reporter's qualified privilege recognized by federal law.[3] In the course of the oral argument before Chief Judge Platt on June 21, 1992 of the motions to quash, Cutler agreed to limit his subpoenas as follows: (1) the Reporters would not be required to produce unpublished notes of interviews of persons other than Cutler and the Government Officials; and (2) the TV Stations would be required to produce outtakes only respecting their interviews of Cutler.
 
 
 10
 At the conclusion of the oral argument, Chief Judge Platt denied the motions to quash and ordered the Reporters and the TV Stations to comply with the subpoenas, as modified. At an appearance before Chief Judge Platt the following day, the Reporters advised the court that they were willing to testify concerning "the substance and published aspects" of the Articles, but were unwilling to reveal confidential sources or to produce notes or other unpublished materials unless directed to do so by the Second Circuit Court of Appeals. The TV Stations advised the court that they would not disclose the Outtakes to Cutler's defense counsel, but were willing to offer the Outtakes for the court's in camera review on the condition that if the district court found the Outtakes to be relevant, the TV Stations would have an opportunity to appeal the district court's ruling before the Outtakes were disclosed to Cutler.
 
 
 11
 Chief Judge Platt rejected the offer of the TV Stations, and ordered the Reporters and TV Stations to "be held in contempt and ordered to pay a fine of $1.00 per day until such time as they comply with the Court's instructions or are excused from doing so," but stayed imposition of the punishment pending an expedited appeal. The Reporters and TV Stations filed timely notices of appeal from this order, and we granted an expedited appeal.
 
 Discussion
 
 12
 A. The Governing Standard.
 
 
 13
 The guiding precedent in this circuit for resolution of the issues presented by this appeal is United States v. Burke, 700 F.2d 70 (2d Cir.), cert. denied, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). In that case, we affirmed the quashing of a subpoena by which a defendant in a criminal case sought production of documents and tapes relating to a magazine article coauthored by a principal prosecution witness and a reporter for the magazine. The defendant sought to impeach the witness with these materials. The magazine moved to quash the subpoena, invoking "the First Amendment reporter's privilege." Id. at 76. We ruled that: "In light of [other] extensive impeachment evidence, the district court properly concluded that any information to be gleaned from the [magazine's] work papers would be merely cumulative and thus would not defeat the [reporter's] First Amendment privilege." Id. at 78 (footnote omitted).
 
 
 14
 We articulated the standard underlying our ruling as follows:
 
 
 15
 When a litigant seeks to subpoena documents that have been prepared by a reporter in connection with a news story, this Circuit's standard of review, at least in civil cases, is well settled:
 
 
 16
 The law in this Circuit is clear that to protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources. Baker v. F & F Investment, 470 F.2d 778, 783-85 (2d Cir.1972), cert. denied, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). Accord,Zerilli v. Smith, 656 F.2d 705, 713-15 (D.C.Cir.1981); Silkwood v. Kerr-McGee Corp., 563 F.2d 433, 438 (10th Cir.1977).
 
 
 17
 In re Petroleum Products Antitrust Litigation, 680 F.2d 5, 7-8 (2d Cir.1982) (per curiam)....
 
 
 18
 We see no legally-principled reason for drawing a distinction between civil and criminal cases when considering whether the reporter's interest in confidentiality should yield to the moving party's need for probative evidence.
 
 
 19
 Burke, 700 F.2d at 76-77.
 
 
 20
 The leading Supreme Court decision on this issue is Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Our only reference to Branzburg in Burke was indirect. We stated in Burke that a prior decision of this court, Baker v. F & F Investment, 470 F.2d 778 (2d Cir.1972), cert. denied, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973), "observed that the Supreme Court's decision in [Branzburg ] recognized the need to balance First Amendment values even where a reporter is asked to testify before a grand jury." Burke, 700 F.2d at 77 (citing Baker, 470 F.2d at 784-85).
 
 
 21
 Cutler contends that we should no longer follow Burke in view of recent Supreme Court statements construing Branzburg, referring to University of Pennsylvania v. EEOC, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), and Cohen v. Cowles Media Co., --- U.S. ----, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). In University of Pennsylvania, an EEOC subpoena called for the production of a tenure review file in the course of the EEOC's investigation of a professor's charge of discrimination. The university unsuccessfully sought to interpose a scholar's privilege based upon "policy considerations and First Amendment principles of academic freedom." 493 U.S. at 188, 110 S.Ct. at 581. In the course of ruling against the asserted privilege, the Court stated:
 
 
 22
 The case we decide today in many respects is similar to Branzburg v. Hayes, 408 U.S. 665 [92 S.Ct. 2646, 33 L.Ed.2d 626] (1972). In Branzburg, the Court rejected the notion that under the First Amendment a reporter could not be required to appear or to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary. Petitioners there, like petitioner here, claimed that requiring disclosure of information collected in confidence would inhibit the free flow of information in contravention of First Amendment principles. In the course of rejecting the First Amendment argument, this Court noted that "the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability." Id., at 682 [92 S.Ct. at 2657]. We also indicated a reluctance to recognize a constitutional privilege where it was "unclear how often and to what extent informers are actually deterred from furnishing information when newsmen are forced to testify before a grand jury." Id., at 693 [92 S.Ct. at 2662]. See also Herbert v. Lando, 441 U.S. 153, 174 [99 S.Ct. 1635, 1647-48, 60 L.Ed.2d 115] (1979). We were unwilling then, as we are today, "to embark the judiciary on a long and difficult journey to ... an uncertain destination." 408 U.S. at 703 [92 S.Ct. at 2668].
 
 
 23
 493 U.S. at 201, 110 S.Ct. at 588 (emphasis added, footnote omitted). Subsequently, in Cohen, the Court cited Branzburg for the proposition that the First Amendment does not "relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source." --- U.S. at ----, 111 S.Ct. at 2518.
 
 
 24
 Branzburg presented three appeals in which reporters declined to provide testimony to, or appear before, grand juries on First Amendment grounds. The Court ruled against the reporters in all three cases. See 408 U.S. at 708-09, 92 S.Ct. at 2670. A five-judge majority opinion stated that "[t]he sole issue before us is the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime." Id. at 682, 92 S.Ct. at 2657. The majority explicitly declined to create a reporter's privilege "by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy." Id. at 690, 92 S.Ct. at 2661. Instead, the majority "insist[ed] that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial." Id. at 690-91, 92 S.Ct. at 2661. The majority added that:
 
 
 25
 [N]ews gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.
 
 
 26
 Id. at 707-08, 92 S.Ct. at 2670 (footnote omitted).
 
 
 27
 Justice Powell concurred in the majority opinion, but also wrote a separate concurring opinion in which he emphasized that reporters would have judicial protection against grand jury investigations that were "not being conducted in good faith," sought "information bearing only a remote and tenuous relationship to the subject of the investigation," or called for the disclosure of "confidential source relationships without a legitimate need of law enforcement." Id. at 710, 92 S.Ct. at 2670 (Powell, J., concurring). Justice Powell explicitly rejected, however, the "three preconditions" stated in a three-judge dissenting opinion. Id.[4] at 710 n.*, 92 S.Ct. at 2671 n.*.
 
 
 28
 The dissenters' proposed test to which Justice Powell took exception is the following:
 
 
 29
 [W]hen a reporter is asked to appear before a grand jury and reveal confidences, I would hold that the government must (1) show that there is probable cause to believe that the newsman has information that is clearly relevant to a specific probable violation of law; (2) demonstrate that the information sought cannot be obtained by alternative means less destructive of First Amendment rights; and (3) demonstrate a compelling and overriding interest in the information.
 
 
 30
 Id. at 743, 92 S.Ct. at 2681 (Stewart, J., dissenting) (footnote omitted).
 
 
 31
 Baker was this court's first assessment of the reporter's privilege in the aftermath of Branzburg. In Baker, we distinguished Branzburg as having only "tangential relevance" because Baker was a civil case. 470 F.2d at 784. Then, in In re Petroleum Products Antitrust Litigation, 680 F.2d 5, 7-8 (2d Cir.) (per curiam), cert. denied, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982), we adopted a rule, again in a civil context, that was explicitly based upon Baker. Finally, in Burke, perceiving "no legally-principled reason for drawing a distinction between civil and criminal cases" in defining the reporter's privilege, 700 F.2d at 77, we adopted the Petroleum Products rule for criminal cases.
 
 
 32
 Cutler essentially argues, based upon the foregoing, that we adopted a rule for criminal cases in Burke that is practically indistinguishable from the view advanced by the three dissenting judges in Branzburg, and is at odds with the majority Branzburg view that there should be no special threshold test for the compulsion of a reporter's testimony before a grand jury or in a criminal case. Further, Cutler points out that the Court's recent unanimous construction of Branzburg in University of Pennsylvania to preclude any "special showing that [a] reporter's testimony [is] necessary," 493 U.S. at 201, 110 S.Ct. at 588, reinforces the initial Branzburg ruling.
 
 
 33
 As we have noted, however, the holding in Burke was that the materials sought by the defense, "virtually every document and tape ... that in any way related to the [magazine] article" coauthored by the prosecution witness whom the defense sought to impeach, 700 F.2d at 76, would have been "merely cumulative" in view of "extensive impeachment evidence" concerning the witness that was already in the trial record. Id. at 78. Burke's articulation of a general test applicable to all phases of a criminal trial was not necessary to the resolution of that case; Burke should accordingly be considered as limited to its facts.[5] In any event, as will appear, the resolution of the issues presented by this appeal does not require direct confrontation of the claimed conflict between Branzburg and Burke that Cutler argues to us.
 
 
 34
 B. Resolution of the Issues on Appeal.
 
 
 35
 We consider first Cutler's demand for (1) the testimony, and production of the unpublished notes, of the Reporters regarding statements made by Cutler to the Reporters in connection with the Articles, and (2) the production of the Outtakes. For the reasons that follow, we conclude that Cutler is entitled to this testimony and the production of these materials.
 
 
 36
 Whatever the doctrinal considerations, we must certainly follow Branzburg when fact patterns parallel to Branzburg are presented for our decision. One of the reporters whose testimony was compelled in Branzburg had "refused to answer questions that directly related to criminal conduct that he had observed and written about." 408 U.S. at 708, 92 S.Ct. at 2670. The allegedly contemptuous conduct by Cutler in this case is precisely what the Reporters observed and wrote about, and what the TV Stations recorded on videotape. Cf.Galella v. Onassis, 487 F.2d 986, 995 (2d Cir.1973) ("Crimes and torts committed in news gathering are not protected [by the First Amendment].") (citing, inter alia,Branzburg ).
 
 
 37
 The special prosecutor's subpoenas are no longer contested, so it is obvious that the Articles and "actually broadcast" videotapes whose production is required by the prosecutor's subpoenas can be admitted in evidence at Cutler's contempt trial. Cutler is clearly entitled to examine the Reporters regarding the context, background, and content of those statements, and to scrutinize their relevant unpublished notes that relate to these matters, as well as the Outtakes in the possession of the TV Stations, to defend against the charge that his statements were criminally contemptuous. SeeUnited States v. Criden, 633 F.2d 346, 359 (3d Cir.1980) (most logical source of information about conversation is one of the participants), cert. denied, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). Other than Cutler's own testimony, which of course cannot be compelled, the evidence that Cutler seeks from the Reporters and the TV Stations is probably the only significant proof regarding his assertedly criminal behavior. Further, even if Cutler should choose to testify, we see no justification for consigning him to his unassisted memory when clearly relevant evidence is readily available from the Reporters and TV Stations. Finally, one of Cutler's major lines of defense is that the statements alleged to be contemptuous were in fact "repl[ies] to charges of misconduct" that are expressly precluded from the purview of Rule 7. That defense would be undercut if Cutler could not obtain relevant evidence regarding the context of his statements that is available only from the Reporters and the TV Stations.
 
 
 38
 The Reporters and TV Stations contend that they should not be required to produce the materials sought by Cutler, or testify on this subject, as to statements made by Cutler prior to any definitive order by Judge Glasser compelling Cutler's compliance with Rule 7. They note in this regard that Chief Judge Platt has deferred any decision whether Judge Glasser's December 1990 and January 1991 warnings were adequately definite and specific to provide a basis for contempt sanctions. See supra note 1 and accompanying text; Cutler II, 815 F.Supp. at 607-09. It should also be noted in this connection that no Cutler statements broadcast by WNYW are charged by the special prosecutor as punishable contempts.
 
 
 39
 The special prosecutor's brief on appeal makes clear, however, that whatever Chief Judge Platt's ultimate ruling regarding Judge Glasser's December 1990 and January 1991 warnings, the special prosecutor will seek to introduce public statements by Cutler concerning Gotti and the Gotti Case throughout the entire period from December 1990 to August 1991 pursuant to Fed.R.Evid. 404(b) in order to establish (1) a pattern of conduct intended to influence potential jurors, and (2) intent to disobey whatever order(s) are ultimately determined to provide a basis for contempt sanctions. Further, the special prosecutor's subpoenas are addressed to Cutler's public statements regarding Gotti and the Gotti Case throughout this period, and are no longer contested. Cutler is entitled to equivalent production of the Reporters' unpublished notes and Outtakes, and cross-examination of the Reporters, in order to respond to the special prosecutor on these issues.
 
 
 40
 The TV Stations also contend that the district court erred in denying the motion to quash the subpoenas rather than first reviewing the Outtakes in camera. In Burke, we encouraged in camera review as a precautionary measure before a definitive ruling to exclude access to assertedly privileged materials, especially when the materials are not voluminous. See 700 F.2d at 78 n. 9. Given the clear relevance of the Outtakes to Cutler's defense, we perceive nothing in Burke that mandates an exercise of the district court's discretion to review them in camera before ordering their disclosure to Cutler. This is especially the case because the TV Stations' suggestion of in camera review was conditioned upon their right to appeal any ruling that ordered disclosure after the in camera review, thus raising the prospect of further delay in the underlying contempt proceeding.
 
 
 41
 The remaining issue is posed by Cutler's demand for access to the Reporters' unpublished notes regarding statements by the Government Officials concerning Gotti and the Gotti Case, and for related cross-examination of the Reporters. Cutler asserts in his brief on appeal that the Reporters' testimony and unpublished notes are relevant to the defenses that he will assert
 
 
 42
 because they will establish, first, that the vast majority of the publicity generated about the Gotti case came from non-Cutler sources and, in the face of this massive publicity, nothing that Mr. Cutler said had a reasonable likelihood of interfering with a fair trial or the due administration of justice. Second, they will demonstrate that many of Mr. Cutler's statements did not violate Local Rule 7 because they were made in response to public allegations that Mr. Cutler had engaged in misconduct or concerned matters other than the pending Gotti case. Finally, they will counter the government's claim that the evidence establishes that Mr. Cutler believed that his statements violated Judge Glasser's order to comply with Local Rule 7 and he intended to violate this order--an element of criminal contempt.
 
 
 43
 We are unpersuaded. The comparative impact of Cutler's public statements and other publicity regarding the Gotti Case manifestly depends upon what was published on that subject, not upon what is in the Reporters' unpublished notes. Similarly, the unpublished notes will cast no light on what Cutler was entitled to say "in response to public allegations that Mr. Cutler had engaged in misconduct [emphasis added],"[6] and will provide no assistance to Cutler in establishing that his statements "concerned matters other than the pending Gotti case." Finally, the content of the unpublished notes, by definition unknown to Cutler at the time that he made the statements upon which the contempt charges are premised, can hardly have affected his intent in making those statements.
 
 
 44
 Cutler points out that a portion of the special prosecutor's cross-examination of an expert witness produced by Cutler was premised upon the proposition that only Cutler, and no government attorneys, violated Judge Glasser's warnings to obey Rule 7, thus highlighting the intentional nature of Cutler's violation. Cutler argues that only access to the Reporters' unpublished notes will enable him to refute this argument by demonstrating that government attorneys commented anonymously to the press concerning Gotti and the Gotti Case.
 
 
 45
 Chief Judge Platt made no finding that such disclosure would assist Cutler at trial; he simply ruled that on the record before him, he was not assured that such evidence would be irrelevant. Its irrelevance, however, seems clear. We are confident that Chief Judge Platt will take into account, to the extent of any relevance it may bear to the issues before him, the attribution in the press to anonymous government sources of comments concerning Gotti and the Gotti Case contemporaneously with some of the Cutler statements that are alleged to be contemptuous. That is all that Cutler could have known when he made those statements, and accordingly all that has any relevance to his intent in making them. Further, the fact that the purported government sources required anonymity does not bespeak a belief on their part that they were complying with Rule 7; it is accordingly hard to follow Cutler's argument that he believed he could respond in kind on the record without committing such a violation.
 
 
 46
 In sum, whether judged by the Branzburg standard or Burke 's special threshold standard, Cutler's argument for production of the Reporters' testimony and unpublished notes regarding statements by Government Officials concerning Gotti and the Gotti Case does not prevail.
 
 Conclusion
 
 47
 The order of the district court is affirmed insofar as it required production of (1) the Reporters' testimony and unpublished notes regarding statements made by Cutler to the Reporters in connection with the Articles and (2) the Outtakes; but reversed insofar as it required production of the Reporters' testimony and unpublished notes concerning statements by the Government Officials regarding Gotti and the Gotti Case. The parties shall bear their own costs. The mandate shall issue forthwith.
 
 
 
 [1]
 In Cutler II, Chief Judge Platt described those warnings as a December "[a]dmonition," a January "[i]nstruction," and a July "[o]rder." Seeid
 
 
 [2]
 Although the format of Cutler's subpoenas to the Reporters seeking unpublished notes and to the TV Stations seeking the Outtakes is identical, the proceedings below and in this court make clear that Cutler presently seeks the unpublished notes and related testimony from the Reporters, but only the Outtakes from the TV Stations
 
 
 [3]
 No issue concerning the special prosecutor's subpoenas is presented on this appeal
 
 
 [4]
 Justice Douglas dissented separately, calling for an absolute reporter's privilege because "absent his involvement in a crime, the First Amendment protects [a reporter] against an appearance before a grand jury and if he is involved in a crime, the Fifth Amendments stands as a barrier." Id. 408 U.S. at 712, 92 S.Ct. at 2687 (Douglas, J., dissenting)
 
 
 [5]
 This opinion has been circulated to the active members of this court prior to filing
 
 
 [6]
 To the extent that any statements by Cutler may have been prompted by inquiries to Cutler that were framed in terms of asserted misconduct on his part, those inquiries must be disclosed in accordance with our ruling requiring testimony and the production of unpublished notes regarding statements made by Cutler to the Reporters in connection with the Articles, and the production of the Outtakes