Albert GONZALES and Mary Gonzales, Plaintiffs,

v.

Deputy Darrell PIERCE, Defendant.

No. M8–85 (HB).

United States District Court, S.D. New York.

Sept. 26, 1997.

## *OPINION AND ORDER*

BAER, District Judge.

This Miscellaneous case comes to me as part of my Part I duties. Both parties to a case pending in the Western District of Louisiana bring this motion to compel production of unedited videotapes from NBC and the deposition of certain NBC personnel. For the reasons stated below, the motion to compel is GRANTED in part and DENIED in part.

## BACKGROUND

Movants are parties to a Section 1983 action in which plaintiffs allege the defendant, a deputy sheriff in Jefferson Davis Parish in Louisiana, stopped and detained them on I-10 without any probable cause or reasonable suspicion. Plaintiffs allege Deputy Pierce has a pattern of conducting such unwarranted stops and that he conducts them in a discriminatory manner as part of an effort to seize assets for forfeiture under Louisiana's Drug Asset Forfeiture Law. In that action, they seek compensatory and punitive damages, as well as injunctive relief.

Plaintiffs assert that they plan to call as witnesses at trial other motorists who were stopped at or about the same place and time by Deputy Pierce and who claim, like plaintiffs, that they were not engaged in the activity cited by Deputy Pierce as the reason for pulling them over, or any other illegal activity. They also plan on introducing certain videotapes of stops performed by Deputy Pierce. These videotapes only show Deputy Pierce's actions after a stop has been made. They do not record activity leading up to the stops in question.

On January 3, 1997, NBC aired a segment on its Dateline television program that included a videotaped stop of one of its employees, Pat Weiland, by Deputy Pierce. The broadcast showed five video images of the car being pulled over and showed Deputy Pierce examining the currency compartment of the driver's wallet. The broadcast did not show all of the car's movements prior to being pulled over. Apparently, the NBC video contains footage of the car's movements before it was stopped. NBC claimed in its broadcast that the footage shows that the vehicle had committed no traffic offenses prior to being pulled over by Deputy Pierce.

Both parties to the Louisiana action seek to depose NBC personnel with knowledge of the events depicted on the video and have subpoenaed the unedited videotapes. NBC objected to the deposition and the subpoena on the grounds of the reporters' privilege and undue burden and the parties moved to compel production.

## DISCUSSION

■ The parties agree that the scope of the asserted privilege is governed by federal law because the underlying case asserts a federal cause of action. Fed.R.Evid. 501; *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987).[1] Taking guidance from Justice Powell's concurring opinion in *Branzburg v. Hayes*, 408 U.S. 665, 709, 92 S.Ct. 2646, 2670–71, 33 L.Ed.2d 626 (1972), lower courts have recognized a qualified journalists' privilege. "The law in this Circuit is clear that to protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, disclosure may be ordered only upon a clear and specific showing that the information is: [1] highly material and relevant, [2] necessary or critical to the maintenance of the claim, and [3] not obtainable from other available sources." *United States v. Cutler*, 6 F.3d 67, 71 (2d Cir.1993) (quotations and citations omitted); *In Re Petroleum Products Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir.1982). This same test applies in both the civil and criminal contexts, *Cutler*, 6 F.3d at 71; *United States v. Burke*, 700 F.2d 70, 76–77 (2d Cir.1983), and applies to both confidential and non-confidential sources, *von Bulow*, 811 F.2d at 143 (dicta) (citing cases) *cf.* New York Civ. Rights Law § 79–h (absolute privilege for confidential source material; qualified privilege for non-confidential sources). The rationale underlying the journalists' privilege—ensuring the free flow of information—supports greater protection for confidential sources, and the development of the reporters' privilege has focused on the importance of protecting the identity of confidential sources. *See, e.g., Petroleum Products*, 680 F.2d at 8 (describing the "necessity for confidentiality [as] essential to fulfillment of the pivotal function of reporters to collect information for public dissemination").

■ Plaintiffs have made a showing that the tapes are highly material and relevant, the first part of the three-step test. Their claims against deputy Pierce assert that he has engaged in a pattern and practice of illegal stops. Each additional instance of proof plaintiffs can garner is thus material and relevant to their claim.

■ Such a showing alone, however, is not enough to meet the second prong of the test, i.e., that the tapes are "necessary or critical to the maintenance of the[ir] claim." The Second Circuit has recently held, in quashing another subpoena seeking out-takes of a Dateline interview, that in order to meet the "necessary or critical" element of the test, "there must be a finding that the claim for which the information is to be used 'virtually rises or falls with the admission or exclusion of the proffered evidence.'" In *Re Application to Quash Subpoena to NBC*, 79 F.3d 346, 351 (2d Cir.1996); *compare Gray v. Board of Higher Educ.*, 692 F.2d 901, 907–09 (2d Cir.1982) (ordering disclosure of vote of tenure committee in plaintiff's civil rights action against college where such disclosure essential to plaintiff's need to prove intent); *Cutler*, 6 F.3d at 73–75 (ordering disclosure of out-takes of allegedly contemptuous statements made by movant, defendant in contempt case; denying disclosure of statements made by others). Were plaintiffs' claims limited to compensatory damages for having been illegally stopped by Deputy Pierce, they would not meet the "critical or necessary" prong of the test. Plaintiffs, however, also seek punitive damages and injunctive relief. Such relief can only be attained upon a showing of a pattern or practice of conduct.[2] Accordingly, because plaintiffs' punitive damages and injunctive relief claims "virtually rise or fall" with the admissibility of the videotapes, this element of the test has been met.

1. "While the federal reporter's privilege controls, courts have also considered the applicable state law in the jurisdiction where the reporter's deposition was noticed. New York courts have found the underlying policies served by the New York State 'Shield Law,' N.Y. Civ. Rights Law § 79–h, and the federal Constitution to be congruent." In Re *Application of Behar*, 779 F.Supp. 273, 274 (S.D.N.Y.1991); *von Bulow*, 811 F.2d at 144.

2. Indeed, plaintiffs have submitted an affidavit asserting that Sheriff Ricky Edwards, Pierce's employer, has stated under oath that he will terminate Pierce if the NBC video shows what NBC claims it shows—that Deputy Pierce pulled over the NBC car without probable cause.

■ Finally, with respect to the third factor, plaintiffs have demonstrated that the evidence they seek is not obtainable from other available sources. The Court recognizes that plaintiffs have an obligation to seek their evidence elsewhere before the privilege can be overcome. "The caselaw in this area is clear. Where the source is known and can be deposed, the availability of a deposition is an alternative source that must be pursued." *Blum v. Schlegel,* 150 F.R.D. 42, 46 (W.D.N.Y.1993) (citing cases) (quashing subpoena for tape recording of interview and holding that movant must depose interview subject instead); *cf. PPM America, Inc. v. Marriott Corp.,* 152 F.R.D. 32, 35 (S.D.N.Y.1993) (ordering non-party witness newsletter to answer deposition questions concerning taped conference call and to authenticate partial transcript of call). In this case, however, a deposition (to which NBC also objects) can not be deemed an adequate substitute. As plaintiffs point out, subjective testimony by drivers asserting they did nothing wrong pails in comparison to objective evidence that that is in fact the case. Other courts have recognized the unique value of a videotape in certain jury cases. In *United States v. Sanusi,* 813 F.Supp. 149 (E.D.N.Y.1992), the court ordered production of CBS' videotape of a search of a criminal defendant's home. Judge Weinstein recognized that:

> [a]s a matter of law, defendant could successfully prove that his apartment contained no evidence of a crime without use of the tape. As a practical matter, however, the value of the tape to a defendant's case in terms of its potential effect on a jury is extremely high.

*Id.* at 159.[3] Plaintiffs in the Louisiana action, by contrast, cannot prove "as a matter of law" that Deputy Pierce pulled anyone over without probable cause without use of the tapes.

Similarly, Deputy Pierce's need for the tapes is equally compelling. While we recognize the tapes will not establish that Deputy Pierce never pulled cars over without probable cause, or that he had probable cause to make the stop of the plaintiffs, the tapes may show that Deputy Pierce had probable cause to stop the NBC vehicle. If so, they would provide unique evidence of both his proper behavior and his veracity. They are also critical to his defense against the punitive damages and injunctive relief claims, especially in light of Sheriff Edwards' stated intentions to terminate Deputy Pierce if the tapes reveal that he acted improperly. Finally, the fact that both parties seek production of the tapes, though not determinative, is indicative of their importance to the case.

Compelling production of the tapes is further supported by the fact that no confidential information is at issue here. Rather, the videotapes record events that took place on a public highway in plain view of anyone who happened on the scene. Further, plaintiffs' counsel has submitted an affidavit stating that he conferred with NBC personnel prior to their investigative journey and informed them what type of car would most likely be stopped by Deputy Pierce. Plaintiffs' counsel also contends that he was told by NBC personnel that the videotapes demonstrate that the car was not slowing down and speeding up, as alleged by Deputy Pierce. These facts, while not determinative, further support production as they indicate the material on the tapes is not confidential and that their substance has been revealed (both on the air and to plaintiffs' counsel).

## CONCLUSION

The Court is cognizant of the important First Amendment interests served by the reporters' privilege and of the important role investigative journalists play in uncovering fraud, corruption and illegal activity in our society. Bearing that in mind and considering plaintiffs' request for injunctive relief and punitive damages, the unique nature of the videotapes at issue and the absence of any confidential sources, the Court finds that other unique considerations, discussed below, further support production.

---

**3.** In reaching his holding, Judge Weinstein relied in part on CBS tortious conduct in filming the search. While no such conduct is at issue here,

movants have met their burden and that NBC must produce a true and correct copy of the unedited videotapes as well as an affidavit authenticating them. Further, the motion to compel is denied with respect to the deposition, with leave to renew should the Louisiana court require further authentication of the tapes.

**SO ORDERED.**