### In re NATURAL GAS COMMODITIES LITIGATION.

No. 03 Civ. 6186(VM).

United States District Court,
S.D. New York.

April 18, 2006.

---

## DECISION AND ORDER

MARRERO, District Judge.

On November 14, 2005, Magistrate Judge Andrew J. Peck, to whom this case was referred for supervision of pretrial proceedings, issued an Opinion and Order ("Order") [1] granting in part and denying in part a motion by plaintiffs, natural gas futures traders ("Plaintiffs"), to compel the production of certain documents from non-parties Platts, a division of McGraw–Hill Companies, Inc., and Intelligence Press, Inc. ("Intelligence Press") (collectively, "the Publications"). The Order granted Plaintiffs' motion to compel with respect to the reported trade data for the Henry Hub natural gas trading location but denied Plaintiffs' motion to compel with regard to reported trade data for all other natural gas trading locations.

Plaintiffs move to set aside the Order to the extent that it denies the motion to compel production of reported trade data for locations other than the Henry Hub. Platts moves to set aside the Order to the extent that it grants Plaintiffs' motion to compel production of the Henry Hub data. Intelligence Press moves to set aside the Order to the extent that it requires Intelligence Press to produce data related to the Henry Hub and to the extent that it requires Intelligence

---

1. The Order is reported at *In re Natural Gas,* No.  235 F.R.D. 199 (S.D.N.Y.2005).

Press to produce information related to its daily price indices.

The Court, having reviewed the Order and the objections to the Order filed by Plaintiffs,[2] Platts,[3] Intelligence Press,[4] as well as Defendants' response[5] to the objections and the documents accompanying the various submissions regarding this matter, affirms that part of the Order that grants Plaintiffs' motion to compel production of the Henry Hub data substantially on the basis of the pertinent findings, reasoning and authority upon which the ruling is grounded. The Court sets aside that part of the Order that denied Plaintiffs' motion to compel production of data from trading locations other than the Henry Hub on the grounds that the supplemental materials provided by Plaintiffs in support of the their objections to the Order,. evidence that was not presented to Magistrate Judge Peck, is sufficient to overcome the Publications' qualified reporter's privilege with respect to the published trading data for all the natural gas trading locations.

## I. BACKGROUND

The relevant facts and prior proceedings are discussed in Magistrate Judge Peck's thorough decision (see Natural Gas, 235 F.R.D. 199, 203–04), a copy of which is incorporated herein, and in this Court's rulings

2. See Plaintiffs' Memorandum of Objections to the November 14, 2005 Order Concerning Plaintiffs' Motion to Compel Production of Documents, dated December 19, 2005 ("Pls.' Mem."); Plaintiffs' Reply Memorandum in Further Support of Their Objections to the November 14, 2005 Order Concerning Plaintiffs' Motion to Compel Production of Documents, dated February 1, 2006; and Plaintiffs' Memorandum in Opposition to the Objections of the McGraw–Hill Companies, Inc. and Intelligence Press to the November 14, 2005 Order Concerning Plaintiffs' Motion to Compel Production of Documents, dated January 6, 2005.

3. See Memorandum of Law Setting Forth the Objections of the McGraw–Hill Companies, Inc. to the November 14, 2005 Opinion and Order of Chief Magistrate Judge Peck and in Support of Motion Requesting Modification Thereto ("Platts's Mem."), dated December 19, 2005; Reply Memorandum of Law in Further Support of the Objections of the McGraw–Hill Companies, Inc. to the November 14, 2005 Opinion and Order of Chief Magistrate Judge Peck and in

denying Defendants' motion to dismiss and granting Plaintiffs' motion to certify the class. See In re Natural Gas Commodity Litig. ("Natural Gas I"), 337 F.Supp.2d 498 (S.D.N.Y.2004); In re Natural Gas Commodities Litig. ("Natural Gas II"), 231 F.R.D. 171 (S.D.N.Y.2005). Plaintiffs allege that Defendants manipulated the prices of natural gas futures contracts traded on the New York Mercantile Exchange ("NYMEX") by falsely reporting trade data related to physical trades of natural gas to industry publications that publish indices of natural gas trade prices. As detailed in the Order, Plaintiffs moved to compel the production of the trade data that was reported to the Publications and used by the Publications to create the published indices. The Publications assert that the reported trade data constitutes confidential information protected by a qualified reporter's privilege and further argue that Plaintiffs failed to make a sufficient showing to overcome the qualified reporter's privilege.

## II. STANDARD OF REVIEW

A district court reviewing a magistrate judge's non-dispositive pretrial order may modify or set aside any part of that order if it is "clearly erroneous or contrary to law." Fed. R. Civ. 72(a). An order may be deemed

Support of Motion Requesting Modification Thereto ("Platts's Reply"), dated February 1, 2006; and Memorandum of Law Submitted by the McGraw–Hill Companies, Inc. Responding to and Opposing Plaintiffs' Objections to the November 14, 2005 Opinion and Order of Chief Magistrate Judge Peck, dated January 6, 2005.

4. See Memorandum of Law in Support of Intelligence Press, Inc.'s Objections to Magistrate Judge Peck's Order dated November 14, 2005, dated December 19, 2005; Intelligence Press, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Objectives to Magistrate Judge Peck's November 14, 2005 Order, dated January 5, 2006; and Intelligence Press, Inc.'s Reply Memorandum to Plaintiffs' Opposition to its Objections to the November 14, 2005 Order, dated February 1, 2006.

5. See Defendants' Response to the Plaintiffs' and Publications' Objections to Magistrate Judge's November 14, 2005 Order Concerning Plaintiffs' Motion to Compel Production of Documents, dated January 4, 2006.

"contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 206 F.R.D. 78, 86 (S.D.N.Y.2002) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.,* 92 F.Supp.2d 70, 74 (N.D.N.Y.2000)). A party seeking to overturn a magistrate judge's decision faces a heavy burden. *See id.*

Platts argues that to the extent the Order held that Plaintiffs met their burden to overcome the qualified reporter's privilege, the Order should be subject to a *de novo,* rather than a "clearly erroneous," standard of review because that part of the decision involved an incursion into Platts's First Amendment rights. (*See* Platts's Reply at 3–4.) Platts cites several Second Circuit cases in which the Circuit Court applied a heightened standard of review to district court decisions where First Amendment rights were at issue. (*See id.* (citing *U.S. v. Quattrone,* 402 F.3d 304, 310–11 (2d Cir.2005))) (subjecting district court order to "exacting review" where order constituted a prior restraint on speech); *Green Party of New York State v. New York State Board of Elections,* 389 F.3d 411, 418 (2d Cir.2004) (holding that "independent examination of the record as a whole" was required in appeal of district court order granting preliminary injunction affecting First Amendment rights.) Platts argues that a district court's review of a magistrate judge's nondispositive order should similarly employ a heightened standard of review where First Amendment rights are at stake.

■ Platts' argument for a heightened standard of review is premised on the assumption that the standard of review of magistrate judges' orders by a district court is determined not by Fed.R.Civ.P. 72(a), but by reference to the standard of review applied by the Circuit Court to cases on appeal. However, neither the language of the Rule nor any relevant authority supports this proposition. Accordingly, the Court rejects Platts's argument and concludes that the "clearly erroneous" standard of review is appropriate.

## III. DISCUSSION

### A. PLAINTIFFS' SHOWING WAS ADEQUATE TO PIERCE THE QUALIFIED REPORTER'S PRIVILEGE

■ Reporters are protected by a qualified privilege against compelled disclosure of confidential sources and information prepared or obtained in connection with a news story. *See United States v. Cutler,* 6 F.3d 67, 71 (2d Cir.1993). The qualified reporter's privilege may be overcome only upon a "clear and specific showing" that the information is "[1] highly material and relevant, [2] necessary or critical to the maintenance of the claim, and [3] not obtainable from other available sources." *Id.* It is undisputed that the data sought by the Plaintiffs was obtained by reporters in connection with the preparation of news items and thus protected by the qualified reporter's privilege. As detailed below, Magistrate Judge Peck correctly applied the three part test and concluded that Plaintiffs made a sufficient showing to overcome the qualified reporter's privilege.

#### 1. Relevance

To maintain their claim, Plaintiffs must prove that Defendants made false reports and that these false reports affected the published gas price indices at issue. The requested data will enable Plaintiffs to identify the alleged false reports Defendants provided to the Publications and to demonstrate that the false reports affected the published indices. Accordingly, the requested data is highly relevant and material to Plaintiffs' claim.

#### 2. Criticality

The second step in the test, whether the material sought is "necessary or critical" to the case, is satisfied where the party's claim or defense " 'virtually rises or falls with the admission or exclusion of the proffered evidence.' " *Natural Gas,* 235 F.R.D., at —— (quoting *In re Application to Quash Subpoena to Nat'l Broadcasting Co.,* 79 F.3d 346, 351 (2d Cir.1996)) (applying the identical test under N.Y. Civil Rights Law § 79(h)(c)).

Platts argues that data related to its monthly indices is not "necessary or critical"

to Plaintiffs' claim because Platts's monthly indices are published several days after the period for bidding on monthly futures contracts has closed for that month. (*See* Platts's Mem. at 9.) Platts explains that NYMEX trading for monthly gas futures contracts closes on the third-to-last business day of the preceding month, while the indices for monthly contracts are not published until the first business day of the month. According to Platts, the time lag between the close of bidding and the publication of the indices "prevents any of *Inside FERC's* monthly indices, including its Henry Hub index, from having any discernable effect on NYMEX trading." (*Id.* at 10.)

█ Plaintiffs dispute this assertion and have submitted expert reports purporting to demonstrate that NYMEX futures prices are in fact highly correlated with the published daily and monthly price indices. However, for purposes of their motion to compel, the test that Plaintiffs must satisfy is grounded on relevancy and criticality, not on causation. Plaintiffs do not have to demonstrate that the false reports caused artificiality in futures prices. They must show only that the requested data is relevant, critical to the maintenance of their claim, and not otherwise available. The ultimate validity of Plaintiffs' case, insofar as it entails causation as an element of a claim, need not be proved at this stage of the litigation. To obtain information during pretrial discovery proceedings that is sufficiently relevant and necessary to maintain a claim, a litigant should not be compelled to establish that the requested material will enable it to prevail on the merits. As in the instant case, particular data may be an essential component to a party's ability to establish causation, but it does not follow that the litigant actually must prove the causal link at this point.

The Publications also argue that Plaintiffs failed to make a sufficient showing that the requested data is necessary and critical to their claim because Plaintiffs allege that, even if the requested data is not produced, Plaintiffs would be able to use regression analysis to construct "but-for" spot prices in the absence of the Publications' data. Magistrate Judge Peck rejected this argument,

noting that such a method of reconstructing price data was identified by Plaintiffs as an inferior approach, and that such an analysis would be subject to methodological challenges by Defendants. Furthermore, the Magistrate Judge correctly concluded that the relevant authority does not define "necessary or critical" as requiring "uniqueness." *Natural Gas,* 235 F.R.D., at 214–15.

### 3. *Availability from Other Sources*

Finally, the Court is persuaded that Plaintiffs made a sufficient showing that the requested data was not obtainable from other sources. Plaintiffs sought the information from Defendants, none of which was able to produce a complete set of the reported trade information. *See id.* at 204–05.

### 4. *Authority*

The Publications cite *E & J Gallo Winery v. Encana Energy Services Inc.,* 33 Med. L. Rptr. 1413 (S.D.N.Y.2005), to support their assertion that Plaintiffs failed to meet the heavy burden required to overcome the qualified reporter's privilege. In *E & J Gallo,* the court denied a motion to compel Platts to produce reported natural gas trading data and other testimony on the grounds that the plaintiff had not made a sufficient showing that the subpoenaed documents and testimony were highly material or critical to the plaintiff's claims. The court also held that the plaintiff had failed to show that it exhausted efforts to seek the documents and testimony from alternative sources. *See id.* As Magistrate Judge Peck noted, however, the *E & J Gallo* court did not provide details about the factual basis for the court's holding. Without such details, it is not possible to compare the plaintiff's showing in *E & J Gallo* with that of Plaintiffs' in the instant proceeding. The analysis of whether a plaintiff has made a sufficient showing to overcome the qualified reporter's privilege is necessarily fact-specific. Thus, the absence of an explanation of the factual basis for the decision renders *E & J Gallo* of limited value to the inquiry in the matter before this Court. Accordingly, the Order is not clearly erroneous on the ground that Magistrate

Judge Peck's conclusion was different from that of the district court in *E & J Gallo*.

Platts also asserts that the Magistrate Judge erred in relying, in part, on *In re Application to Enforce Administrative Subpoena of the United States Commodity Futures Trading Commission v. McGraw–Hill Companies, Inc.* ("*CFTC*"), 403 F.Supp.2d 34 (D.D.C.2005). In *CFTC*, the CFTC sought to prove that an energy company had submitted false trade data to Platts in an attempt to affect energy prices. The *CFTC* court held that the plaintiff made a sufficient showing to overcome the qualified reporter's privilege because the plaintiff demonstrated that the subpoenaed information was "crucial to the plaintiff's proof." The court further noted that "to determine whether the Energy Company's false reports actually did affect prices, or had the potential to do so, the CFTC needs to know how Platts transformed the raw data from companies such as Energy Company into its published indices ... Thus, Platts' formulas are crucial for determining whether Energy Company's false reporting did, or could have, had an effect on prices." *Id.*, 235 F.R.D. at 213. Magistrate Judge Peck concluded that Plaintiffs made a similar showing in the instant proceeding and accordingly held that "the same analysis and conclusion applies" to the Plaintiffs' motion to compel.

Platts asserts that the Magistrate Judge's reliance on *CFTC* was misplaced because that case "turned on the comparison of the CFTC's investigative authority to that of a grand jury." (*See* Platts's Mem. at 8 (*citing CFTC*, 390 F.Supp.2d at 33.)) Platts explains that the *CFTC* court considered the CFTC's status as a government enforcement agency an important factor in its consideration of whether the plaintiff had overcome the qualified reporter's privilege. The *CFTC* court explained that the burden was less onerous for a criminal enforcement agency than for a party in an ordinary civil case and likened a CFTC investigation to a grand jury investigation. *See CFTC*, 390 F.Supp.2d at 33. While the *CFTC* court considered the CFTC's status as an enforcement agency a significant factor weighing in the CFTC's favor in its analysis of whether the CFTC had overcome the qualified reporter's privilege, the CFTC's status as an enforcement agency was not by itself dispositive, but rather only one of the court's considerations. Furthermore, Magistrate Judge Peck cites that portion of the *CFTC* courts's analysis relating to the relevance and criticality of the requested documents. The *CFTC* court's conclusion that the materials were relevant and critical to the plaintiff's claim was not grounded in the plaintiff's status as a government enforcement agency. Therefore, the Magistrate Judge's reliance, in part, on the *CFTC* court's analysis, does not constitute an error of law.

### 5. *Intelligence Press's Daily Indices*

Intelligence Press also argues that Plaintiffs failed to make a sufficient showing of relevance and criticality with respect to the trade data related to Intelligence Press's daily indices. Intelligence Press argues that its daily indices reach only a small fraction of the relevant market and therefore could not have played a role in the manipulation of natural gas futures prices. This argument, like Platts's contention regarding time lag between bidding and publication of the indices that the Court rejected above, goes to the issue of causation, not relevance and criticality. As already discussed, to prevail in their motion to compel, Plaintiffs are not required to demonstrate that the indices caused artificiality in the futures contract prices, but only to show that the requested data is highly relevant, necessary to their ability to ultimately prove their claim, and unavailable from other sources. As set forth above, Plaintiffs showing is sufficient to satisfy each of the three prongs.

### B. *TRADE DATA FOR LOCATIONS OTHER THAN THE HENRY HUB*

Magistrate Judge Peck determined that Plaintiffs' showing was sufficient to overcome the qualified reporter's privilege with respect to the reported trade data for trades of natural gas delivered at the Henry Hub. However, he found that Plaintiffs failed to make a sufficient showing with regard to trade data related to trades at other natural gas trading locations. In this regard, the

Magistrate Judge distinguished between trades at the Henry Hub and trades at other locations, as natural gas futures prices traded on NYMEX are contracts for the future delivery of natural gas at the Henry Hub only. *See Natural Gas,* 235 F.R.D., at 212–13. Magistrate Judge Peck noted that Plaintiffs submitted a Declaration from Dr. Michael J. Harris ("Harris"), dated July 27, 2005, in which Harris opines that the subpoenas should not be limited to high-volume hubs because he is not yet able to determine which indices influenced NYMEX prices. *See id.* at 205–06. Magistrate Judge Peck ruled that this statement, without more, did not constitute a sufficient showing that the data from locations other than the Henry Hub was relevant and necessary or critical to their claim.

As noted above, Plaintiffs submitted supplemental materials in support of their objections to the Order that demonstrate the relevance and criticality of the non-Henry Hub data to the maintenance of their claim. These submissions include additional declarations and accompanying exhibits providing evidence of correlations between published spot price indices at locations other than the Henry Hub with NYMEX futures prices. The additional materials include the Declaration of Franklin Edwards (the "Edwards Decl."), dated December 9, 2005, the Declaration of Mark Dwyer (the "Dwyer Decl."), dated February 1, 2006, the Declaration of Michael J. Harris (the "Harris Decl."), dated December 8, 2005, and the Declaration of Michael J. Harris dated February 1, 2006 (the "Harris Decl. 2"). The Publications and the Defendants had an opportunity to review these supplemental materials and to offer additional submissions and arguments in response to these submissions. Platts submitted additional declarations from Benjamin Schlesinger ("Schlesinger"), dated December 19, 2005, January 6, 2006, and February 1, 2006 ("Schlesinger Decl. 1"; "Schlesinger Decl. 2"; and "Schlesinger Decl. 3", respectively.).

■ A district court has discretion to consider supplemental evidence on review of a magistrate judge's order. *See Hynes v. Squillace,* 143 F.3d 653 (2d Cir.1998). Plaintiffs' supplemental materials include expert reports that purport to demonstrate that published price indices for trades at locations other than the Henry Hub are closely correlated and related to prices of NYMEX natural gas futures contracts. (*See* Edwards Decl.; Harris Decl.; Harris Decl. 2; and Dwyer Decl.) Plaintiffs also assert that courts in commodity futures manipulation cases have frequently recognized that manipulative acts occurring at locations other than the delivery point for futures contracts may, under certain circumstances, skew futures contract prices. (*See* Pls.' Mem. at 15–16 (*citing In re Sumitomo Copper Litigation,* 182 F.R.D. 85, 87 (S.D.N.Y.1998)); *Transnor (Bermuda) Ltd. v. BP North America Petroleum,* 738 F.Supp. 1472, 1474 (S.D.N.Y. 1990).)

■ Platts's submissions include several Declarations from Schlesinger to refute Plaintiffs' claims, asserting that none of the published price indices at any of the trading locations are meaningfully related to NYMEX futures contract prices. (*See* Schlesinger Decl. 1.) Furthermore, Schlesinger states that Plaintiffs' submissions are inadequate because the submissions demonstrate only *correlations* between published price indices and NYMEX futures prices, not *causation.* (*See* Schlesinger Decl. 2 at 2.) The Court has already sufficiently addressed this point above. At this pretrial stage of the litigation, causation is not a showing Plaintiffs are required to make in order to satisfy the three prongs of the applicable test and thus obtain relevant discovery. Accordingly, the Court concludes that Plaintiffs have made a sufficient showing to overcome qualified reporter's privilege with respect to the trade data for natural gas physical trading locations including, but not limited to, the Henry Hub.

## C. *THE BURDEN ON THE PUBLICATIONS*

The Court recognizes that the modification of the Order to include all natural gas trading hubs substantially increases the burden imposed on the Publications. Therefore, the Publications shall utilize a sample protocol, as described in the Order, to minimize the burden on them. The Publications shall confer with Plaintiffs to develop and agree to

conduct a limited initial search for data from a portion of the class period and for a sufficiently representative subset of the total number of hubs. After this initial search, as appropriate and necessary and under the supervision and guidance of Magistrate Judge Peck, the Plaintiffs and Publications shall assess whether further production may be limited to a subset of trading hubs (for example, further production could be limited to hubs identified as highly correlated with NYMEX prices during the initial search, or to high-volume hubs). The parties may subsequently re-visit the issue of whether any undue burden still exists. Finally, the Court affirms the Order to the extent that it specifies the manner in which the requested materials should be produced, including instructions regarding redactions.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of plaintiffs in this action, certain natural gas futures traders (the "Plaintiffs"), to set aside that part of the Opinion and Order ("Order") of Magistrate Judge Andrew J. Peck dated November 14, 2005 that denied Plaintiffs' motion to compel production of documents related to reported trades at locations other than the Henry Hub (Docket No. 388) is **GRANTED** subject to the limitations discussed above; and it is further

**ORDERED** that the motion by non-party Platts to set aside that part of the Order that granted Plaintiffs' motion to compel production of documents related to reported trades at the Henry Hub (Docket No. 386) is **DENIED**, and it is further

**ORDERED** that the motion by non-party Intelligence Press, Inc. to set aside that part of the Order that granted Plaintiffs' motion to compel production of documents related to reported trades at the Henry Hub and to set aside that part of the Order that granted Plaintiffs' motion to compel production of information relating to Intelligence Press,

Inc.'s daily price indices (Docket No. 383) is **DENIED.**

**SO ORDERED.**