Request of Governor and Council
No. 7787

OPINION OF THE JUSTICES

May 17, 1977

The following resolution was adopted by the Governor and Council on May 4, 1977, and filed with the supreme court on May 5, 1977:

"WHEREAS, the New Hampshire Department of Probation by a petition filed with the Governor and Council, in two parts, dated March 11th, 1977 and March 21st, 1977 has sought the removal of the Director of Probation, John A. King, pursuant to RSA 4:1; and

"WHEREAS, Governor Meldrim Thomson, Jr. has recused himself from presiding in this matter and Senate President Alf E. Jacobson is sitting in his stead; and

"WHEREAS, prior to the hearing counsel for both the Board of Probation and Mr. King engaged in a series of depositions of potential witnesses; and

"WHEREAS, one such deposition was taken from R. Warren Pease, a reporter for the *New Hampshire Sunday News* newspaper, which deposition centered around a series of articles that Mr. Pease had written in June and July of 1976 concerning the operation of the New Hampshire Department of Probation and which contained statements made by one or more unnamed members of that Department; and

"WHEREAS, R. Warren Pease, when asked by counsel for Mr. King, refused to disclose the names of said members of the Department of Probation; and

"WHEREAS, counsel for Mr. King has sought an order from the Senate President and Council compelling Mr. Pease to disclose the names of the individuals he has quoted in his articles (a copy of which is attached); and

"WHEREAS, the Senate President and Council are uncertain as to whether they have the authority in an RSA 4:1 proceeding to compel the disclosure of the names of the individuals interviewed by Mr. Pease; and

"WHEREAS, counsel for Mr. King has represented to the Senate President and Council that this information is essential to the preparation and presentation of his case; and

"WHEREAS, the Senate President and Council believe that the issues presented here constitute important questions of law upon a solemn occasion in which it would be appropriate to request the court to issue an advisory opinion, pursuant to Part II, Article 74 of the Constitution of New Hampshire.

"NOW, THEREFORE, BE IT RESOLVED that the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

"1. May the Senate President and Council in an RSA 4:1 removal proceeding order a witness who is a news reporter to disclose the sources of information which he utilized in preparing a series of articles which relate directly to the performance of the official whose removal is sought?

"2. If the answer to the first question is in the affirmative, can the Senate President and Council order that news reporter to disclose those names prior to his taking the stand as a witness?

"3. If the answer to Question One is in the affirmative, and the Senate President and Council order a witness who is a news reporter to disclose his sources of information and he refuses, how do the Senate President and Council enforce their order?

"AND BE IT RESOLVED that the Secretary of State be directed to submit six attested copies of this resolution to the Clerk of the Supreme Court."

The following answers were returned:

*To His Excellency the President of the Senate and the Honorable Council:*

The undersigned justices of the supreme court return the following answer to the questions contained in your resolution adopted May 4, 1977, and filed in this court on May 5, 1977.

Your first question is as follows:

May the Senate President and Council in an RSA 4:1 removal proceeding order a witness who is a news reporter to disclose the sources of information which he utilized in preparing a series of articles which relate directly to the performance of the official whose removal is sought?

We answer your question in the negative.

RSA 4:1 is a statutory method by which state officials may be removed from office by the Governor and Council following a hearing. Removal petition action against the director of the department of probation is currently pending before the President of the Senate (the Governor having recused himself) and the Council.

Last summer, reporter R. Warren Pease wrote a series of articles about the probation department that contained employee criticism against Director John A. King. Some sources were not stated by name. On April 26 of this year counsel for Mr. King took the reporter's deposition but Mr. Pease then and now has declined to name the probation officers and employees quoted in his *New Hampshire Sunday News* articles. Mr. King's counsel has now asked for an order "compelling Mr. Pease to disclose the names of the individuals he has quoted in his articles" and represents "that this information is essential to the preparation and presentation of his case."

While some twenty-five states have some form of "shield law" to prevent reporters from being compelled to disclose confidential information, Comment, *Search Warrants and Journalists' Confidential Information,* 25 Am. U.L. Rev. 938, 957 n.88 (1976), New Hampshire is not one of them. This state has three statutory privileges all of which are grounded on the same basis as confidential communications between attorney and client. *See* RSA 329:26 (Supp. 1975) for physicians and surgeons, RSA 330-A:19 for psychologists, and RSA 330-B:15 (Supp. 1975) for pastoral counselors. Even a statutory privilege is not fixed and unbending and must yield to countervailing considerations such as the rights to counsel and confrontation in a criminal case. *State v. Farrow,* 116 N.H. 731, 366 A.2d 1177 (1976).

In the absence of a statutory reporter's privilege we turn briefly to the question of whether such a privilege exists at common law. "At common law, courts consistently refused to recognize the existence of any privilege authorizing a newsman to refuse to reveal

confidential information to a grand jury." *Branzburg v. Hayes,* **408** U.S. 665, 685 (1972). *See generally* Annot., 7 A.L.R.3d 591 (1966). No such general right existed at common law for civil proceedings.

In *Branzburg v. Hayes,* 408 U.S. 665 (1972), the Supreme Court rejected by a five-to-four margin the proposition that a reporter's privilege existed when faced with inquiries before a grand jury. The newsmen involved in the *Branzburg* trilogy had asserted that a qualified privilege existed in grand jury proceedings unless the government could show (1) "probable cause to believe that the reporter possesses information relevant to a specific violation of law; (2) that the information sought cannot be obtained by alternative means from sources other than the reporter; and (3) that there is compelling and overriding governmental interest in the information." American Trial Law Foundation, Final Report, *The First Amendment and the News Media* 43 (1973).

However, in rejecting the proposed test in criminal proceedings before a grand jury the Court made clear that it was "powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute." *Branzburg,* 408 U.S. at 706. The New Hampshire Constitution, part I, article 22 provides that "liberty of the press" is "essential to the security of freedom in a state" and ought, therefore, "to be inviolably preserved."

Our constitution quite consciously ties a free press to a free state, for effective self-government cannot succeed unless the people have access to an unimpeded and uncensored flow of reporting. News gathering is an integral part of the process. One study showed that more than ninety percent of the reporters surveyed believed protection of identity was more important than protection of contents. V. Blasi, *Press Subpoenas: An Empirical and Legal Analysis* 63 (1972). Courts have recognized such a privilege in areas other than criminal proceedings. *See Baker v. F. & F. Investment,* 470 F.2d 773 (2d Cir. 1972); *Democratic Nat'l Comm. v. McCord,* 356 F. Supp. 1394 (D.D.C. 1973).

We hold only that in this civil proceeding involving the press as a nonparty, the balance is struck in favor of the press. *See* N.H. CONST. pt. I, art. 22. We need not decide the scope of the privilege, whether it is absolute, who is a reporter, what qualifies as "press," what the situation would be if criminal proceedings were at issue, or whether libel actions would require disclosure.

We need not answer your other two questions.

FRANK R. KENISON
EDWARD J. LAMPRON
WILLIAM A. GRIMES
CHARLES G. DOUGLAS, III

BOIS, J., being a member of the probation board asks to be excused from rendering an opinion.

James J. Barry, Jr., Esquire filed memorandum in behalf of R. Warren Pease.