NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2016-0507

THE STATE OF NEW HAMPSHIRE

v.

CARL GIBSON

Argued: May 18, 2017
Opinion Issued: September 21, 2017

Joseph A. Foster, attorney general (Stephen G. LaBonte, assistant attorney general, on the brief and orally), for the State.

Brennan, Lenehan, Iacopino & Hickey, of Manchester (Michael J. Iacopino and Jenna M. Bergeron on the brief), for the defendant.

Orr & Reno, P.A., of Concord (William L. Chapman on the brief and orally), for Nicholas Reid.

DALIANIS, C.J. The State appeals the order of the Superior Court (McNamara, J.) granting news reporter Nicholas Reid's (Reid) motion to quash the State's subpoena compelling him to testify against the defendant, Carl Gibson. We reverse and remand.

The relevant facts follow. Republican candidate Yvonne Dean-Bailey (Dean-Bailey) was running in a May 19, 2015 special election for State Representative from Rockingham County District 32. On May 14, 2015, the defendant, a volunteer for the opposing Democratic Party candidate, allegedly issued a false press release stating that Dean-Bailey was dropping out of the race.

The press release was attached to an e-mail with a subject line stating, "BREAKING: Yvonne Dean-Bailey concedes Rockingham 32 special election #nhpolitics." (Bolding omitted.) The press release stated that Dean-Bailey, "a freshman . . . at Mount Holyoke College," had "bowed out of the May 19 special election" in order to "focus[ ] exclusively on her studies before considering another run for office."

Reid, who was covering the special election as a reporter for the Concord Monitor, received the e-mail with the attached press release and became suspicious because of the form and content of the e-mail and attached file. He contacted a representative of the New Hampshire Republican Party who was unaware of Dean-Bailey withdrawing from the race. Reid then wrote a short article for the May 15, 2015 issue of the newspaper titled "Email claiming Dean-Bailey is conceding called a hoax."

Reid investigated the file that was attached to the May 14 e-mail by selecting "Properties" under the "File" tab, which indicated that the creator of the file was "Carl Gibson" and that the file was created on May 14, 2015, at 19:30:00. Reid then conducted an internet search to determine how to contact Gibson.

On May 15, Reid contacted by telephone a man who identified himself as Gibson. Based upon that conversation and his conversations with other sources, Reid wrote a second article published in the Concord Monitor on May 16 under the headline, "Man who sent hoax email from GOP candidate had 'too many beers' before 'prank.'" (Bolding omitted.) The article, describing Gibson as "[a] liberal activist" who had been "booted" from the opposing candidate's special election campaign, reported that Gibson stated to Reid that he had "creat[ed] a fake email account and sen[t] a phony press release," thinking it was "a prank" he could play "in the heat of the moment." (Quotation omitted.)

In October 2015, the defendant was charged with "False Documents, Names or Endorsements," see RSA 666:6 (2016), attempted voter suppression, see RSA 629:1 (2016) and RSA 659:40, III(b) (2016), and voter suppression, see RSA 659:40, III(c) (2016). In March 2016, Reid was served with a subpoena requiring him "to testify what [he] know[s] relating to a criminal matter to be heard and tried between the State . . . and Carl Gibson." The information

sought by the State is "inculpatory statements that amount to a confession made by the defendant while being interviewed by Mr. Reid."

Reid moved to quash the subpoena on the ground that it violates his "newsgathering privilege" under Part I, Article 22 of the New Hampshire Constitution and the First Amendment to the United States Constitution. The State objected, asserting that the privilege does not apply because the testimony it seeks from Reid concerns only non-confidential information. Following a hearing, the trial court granted Reid's motion to quash. The court found that "the newsgathering privilege guaranteed by Part I, Article 22 of the New Hampshire State Constitution must extend to protect unpublished work product of journalists in order to ensure unimpeded and uncensored flow of reporting that is essential to a free state." In addition, the trial court found that the defendant's cross-examination of Reid would "necessarily" result in Reid having to divulge unpublished information. The State moved for reconsideration, which the court denied, and this appeal followed.

II

On appeal, the State argues that the trial court erred "by expanding the scope of the news-gathering privilege to include non-confidential sources." Further, the State contends that the trial court's concern about Reid's possible cross-examination testimony was "premature and unwarranted." Reid counters that Part I, Article 22 of the New Hampshire Constitution "provide[s] a qualified privilege to the press to protect newsgathering activities where the published information at issue was obtained from identified and unidentified sources," and that the trial court correctly ruled that the standard set forth in State v. Siel, 122 N.H. 254 (1982), applies to this case and the State failed to satisfy its requirements for overcoming the newsgathering privilege. The defendant similarly asserts that the trial court correctly found that "the scope of the newsgathering privilege includes non-confidential sources," and that the State "did not exhaust all reasonable alternatives to obtain the Defendant's confession."

We review issues of constitutional law de novo. State v. Leavitt, 165 N.H. 32, 33 (2013).

III

The narrow question before us is whether, on the facts of this case, the newsgathering privilege under the State Constitution extends to protect a news reporter from testifying in a criminal proceeding about non-confidential information that he gathered in the course of investigating a news story and subsequently published in a newspaper. We hold that it does not.

3

Part I, Article 22 of the New Hampshire Constitution provides that "[f]ree speech and liberty of the press are essential to the security of freedom in a state" and "ought, therefore, to be inviolably preserved." N.H. CONST. pt. I, art. 22. In Opinion of the Justices, 117 N.H. 386 (1977), we recognized, under this constitutional provision, a qualified privilege for a news reporter to refuse to disclose the confidential sources of information he utilized in preparing a series of articles that related directly to the performance of an official who faced statutory removal from office. See Opinion of the Justices, 117 N.H. at 386-87, 389. We reasoned that because "[o]ur constitution quite consciously ties a free press to a free state, . . . effective self-government cannot succeed unless the people have access to an unimpeded and uncensored flow of reporting," and "[n]ews gathering is an integral part of the process." Id.

Several years later, we addressed whether news reporters have a qualified privilege to withhold the identity of confidential news sources in a criminal case. Siel, 122 N.H. at 256. In Siel, defense counsel subpoenaed two newspaper reporters to appear at a discovery deposition to give evidence relating to articles they had written about the activities and whereabouts of the victim during the week before he was allegedly murdered by the defendant. Id. at 257. The reporters moved to quash the subpoenas on the ground that they had no personal knowledge about the victim and that the information in the articles had been provided by confidential informants. Id.

Noting that we had previously recognized that Part I, Article 22 encompasses a qualified privilege for reporters in civil cases, we determined that such privilege must not cease to exist in a criminal case. Id. at 259. However, we cautioned that "because the individual citizen's civil rights must also be protected, a news reporter's privilege is more tenuous in a criminal proceeding than in a civil case." Id. (quotation omitted). We adopted a three-pronged test that a defendant must satisfy in order to overcome a press privilege to withhold a confidential news source in a criminal case. Id. Under that test, a defendant must show: (1) that he has attempted unsuccessfully to obtain the information by all reasonable alternatives; (2) that the information would not be irrelevant to his defense; and (3) that, by a balance of the probabilities, there is a reasonable possibility that the information sought as evidence would affect the verdict in his case. Id.

In the case before us, the trial court acknowledged that although Siel involved a case in which the criminal defendant sought to pierce the privilege, "at a minimum the same balancing of interests applies where the State seeks to pierce the privilege, given the societal interest in all citizens giving relevant testimony about criminal conduct." The court characterized the information sought by the State from Reid as testimony "about his unpublished work product, and potentially identify[ing] his confidential sources." Thus, the court reasoned, "[r]equiring [Reid] to testify . . . would have a chilling effect on the free flow of information because journalists would appear to be an investigative

4

arm of the State, thereby reducing sources' willingness to talk and diminishing journalists' incentive to investigate and report."

As the State asserts, however, Reid himself admitted to an investigator from the attorney general's office that "everything he discussed with Mr. Gibson is in the news story he wrote," and the State avers that it "is not seeking any information beyond what Reid published from identified sources." (Brackets omitted.) Indeed, Reid stated in an e-mail that he sent to the investigator that the investigator "can find everything [Reid] discussed with Mr. Gibson in [the May 15] news story [he] wrote" and that "[w]hat's expressed there is the entirety of [his] conversation with Mr. Gibson." Accordingly, the testimony sought by the State from Reid is limited to non-confidential, published information.

Reid cites several concerns that he raised before the trial court about being required to testify, including that "it would be difficult for [him] to do his job if [he] faced the prospect of having to testify in criminal cases which [he] reported on," that he "could be perceived by the public as being an agent of the prosecution," and that "[t]hat perception would make it that much more difficult for [him] to do the type of newsgathering that is necessary to report on criminal cases." We are not persuaded, however, that the limited information sought by the State under the specific facts of this case presents any potential impairment of the newsgathering process. See United States v. Smith, 135 F.3d 963, 970 (5th Cir. 1998) (explaining that "there is little reason to fear that on-the-record sources will avoid the press simply because the media might turn over nonconfidential statements to the government" because "[p]resumably, on-the-record sources expect beforehand that the government, along with the rest of the public, will view their nonconfidential statements when they are aired by the media"); United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988) (recognizing that whereas the disclosure of confidential sources or information "would clearly jeopardize the ability of journalists and the media to gather information and, therefore, have a chilling effect on speech," the court had "been referred to no authoritative sources demonstrating or explaining how any chilling effect could result from the disclosure of statements made for publication without any expectation of confidentiality").

We recognize that the trial court acknowledged that the "fulcrum of the State's argument is that it does not intend to obtain any confidential information from Reid because it intends to limit its questioning of Reid to the statements made by the man who identified himself as Gibson." Nonetheless, the court determined that because the defendant would be entitled to cross-examine Reid, "a full and fair cross-examination would necessarily require the Court to allow the Defendant to inquire about unpublished information, such as Reid's mental impressions and investigative process." As the State argues, however, not only is this concern premature, even if the defendant's cross-examination could lead to Reid asserting the newsgathering privilege, the

5

burden of overcoming the privilege would lie with the defendant, not the State. Cf. State v. Eason, 133 N.H. 335, 345 (1990) (explaining that, in the context of the attorney-client privilege, although a trial court may not summarily reject a criminal defendant's claim of his right to cross-examine a witness who has correctly invoked an evidentiary privilege, it is up to a defendant who wishes to overcome the privilege to show that the admission of privileged information is at least reasonably necessary to his defense).

We hold that the trial court erred as a matter of law in determining that Reid has a qualified privilege under Part I, Article 22 of the State Constitution to refuse to testify in a criminal trial about non-confidential, published information obtained from identified sources. Cf. Branzburg v. Hayes, 408 U.S. 665, 690 (1972) (in concluding that the First Amendment does not afford protection to reporters to refuse to testify before a grand jury, the Court stated that it "perceived no basis for holding that the public interest in law enforcement . . . is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a . . . criminal trial"); id. at 710 (Powell, J., concurring) (emphasizing that "[t]he asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct"). Our decision in this "sensitive area[ ]" is "narrowly based upon the factual posture" presented in this case. Siel, 122 N.H. at 259.

Although Reid based his motion to quash upon the ground that it violates his newsgathering privilege under both Part I, Article 22 of the State Constitution and the First Amendment to the United States Constitution, the trial court based its decision solely upon the State Constitution. Because we hold that the trial court's determination was erroneous, we remand for the trial court to consider, in the first instance, Reid's federal constitutional claim.

Reversed and remanded.

HICKS and LYNN, JJ., and MANGONES, J., retired superior court justice, specially assigned under RSA 490:3, concurred.

6